# IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANNE M. PAPA | : | |
|  | : | |
| **Plaintiff** | : | |
|  | : | |
| VS. | : | NO. 10701 OF 2020 CA. |
|  | : | |
|  | : | |
| NESHANNOCK VFD; | : | |
| NESHANNOCK VFD BOARD; | : | |
| CHIEF JOHN DiCOLA, | : | |
| in his individual and official capacities, | : | |
| DEPUTY BRADLEY SHAFFER | : | |
| in his individual and official capacities, | : | |
| DEPUTY BRIAN MELCER | : | |
| in his individual and official capacities, | : | |
|  | : | |
| **Defendants** | : | **JURY TRIAL DEMANDED** |

**COMPLAINT** 122220

FILED ON BEHALF OF:

**ANNE M. PAPA**

COUNSEL FOR THIS PARTY:
Angelo A. Papa, Esquire
Supreme Court #47049
318 Highland Avenue
New Castle, PA 16101
(724) 654-8111
(724) 654-6766 Fax

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

FILED ORIGINAL

**IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| ANNE M. PAPA | : | |
| | : | |
| **Plaintiff** | | |
| VS. | : | **NO. 10701 OF 2020 CA.:** |
| | : | |
| NESHANNOCK VFD; | : | |
| NESHANNOCK VFD BOARD; | : | |
| CHIEF JOHN DiCOLA, | : | |
| in his individual and official capacities, | : | |
| DEPUTY BRADLEY SHAFFER | : | |
| in his individual and official capacities, | : | |
| DEPUTY BRIAN MELCER | : | |
| in his individual and official capacities, | | |
| | | |
| **Defendants** | | |

## NOTICE TO DEFEND AND CLAIM RIGHTS

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action with twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:**
Office of Lawyer Referral Third Floor
Lawrence County Government Center430 Court Street
New Castle, PA 16101(724) 656-1921

AMERICANS WITH DISABILITIES ACT OF 1990
The Court of Common Pleas of Allegheny County is required to comply with the Americans Disabilities Act of 1990. For information about accessible facilities and reasonable accommodations available to disabled individuals having business before the Court, please contact our office. All arrangements must be made at least 72 hours prior to any hearing or business before the Court. You must attend the scheduled conference or hearing.

FILED/ORIGINAL

2020 DEC 23  PM 3: 02                               2

JODI KLABON-ESOLDO

## IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

ANNE M. PAPA            :

         **Plaintiff**      :

VS.                  :     **NO. 10701 OF 2020 CA.**

NESHANNOCK VFD;         :
NESHANNOCK VFD BOARD;    :
CHIEF JOHN DiCOLA,        :
   in his individual and official capacities, :
DEPUTY BRADLEY SHAFFER    :
   in his individual and official capacities, :
DEPUTY BRIAN MELCER      :
   in his individual and official capacities, :
                    :
       **Defendants**      :    **JURY TRIAL DEMANDED**

### COMPLAINT121920

AND NOW, comes Plaintiff, Anne M. Papa, hereinafter Plaintiff, by and through her attorneys, Alexander H. Lindsay, Jr., Esquire, Max B. Roesch, Esquire, and The Lindsay Law Firm, P.C., and files this Complaint and avers the following:

### PARTIES

1.     Plaintiff is an adult individual residing in New Castle, Pennsylvania.

2.     Defendant **Neshannock Volunteer Fire Department (VFD)** is a volunteer fire company organized under Pennsylvania state law, hereinafter "Department".

3.     Defendant **Neshannock Volunteer Fire Department (BOARD)** is the governing and supervisory body controlling the conduct of department, officers, members, and day-to-day supervision of the volunteer fire company organized under Pennsylvania state law, hereinafter "Board".

ORIGINAL

2020 DEC 23 PM 3: 02

JODI KLABON-ESOLDO

4.      Defendant **Chief John DiCola** is the chief of the volunteer fire company chief organized under Pennsylvania state law, hereinafter "CHIEF" named as a defendant in his official capacity as chief and individually.

5.      Defendant **Deputy Bradley Shaffer** is an assistant chief of the Neshannock Volunteer Fire Department (VFD) a volunteer fire company organized under Pennsylvania state law, hereinafter "Deputy Shaffer", named as a defendant in his official capacity, and individually.

6.      Defendant **Deputy Brian Melcer** is an assistant chief of the Neshannock Volunteer Fire Department (VFD) a volunteer fire company organized under Pennsylvania state law, hereinafter "Deputy Melcer", named as a defendant in his official capacity, and individually.

7.      Hereinafter the term "all defendants" is used to refer to each and/or all entities collectively and individuals and officials in their official and individual capacity.

8.      This complaint was drafted and filed, prior to discovery, and after defendant refusal to agree to pre complaint discovery and consistent with the confines and allowances of P Rule 3.1, plaintiff believes and therefore avers that evidence will be discovered, produced, and otherwise presented indicating and properly supporting the following facts:

**FACTS**

9.      Plaintiff incorporates by reference all prior paragraphs of this pleading as though fully set herein.

FILED/ORIGINAL

2020 DEC 23  PM 3: 02

JODI KLABON ESOLDO

4

10.     Most if not all of any of the vague notices that the plaintiff did receive usually suggested that "the Board" was the actor. We know: that the Board is made up of multiple members and must follow meeting rules; we know that the officer defendants had to be involved and likely at least some members in at least one or more indispensable communications for any of the termination decisions to be performed, all of which makes all of these defendants indispensably necessary and liable.

11.     Plaintiff believes and therefore avers that each of the defendants individually and collectively, likely had different motives, different polluted conduct at various times and in various ways and degrees, and  eventually all defendants to varying degrees and in various ways, either directly, indirectly, by commission and omission, conducted themselves in an improper and illegal manner, and expressly, by inference, and/or tacitly, conspired in a common plan and scheme, to negligently and intentionally injure the plaintiff, making them jointly and severally liable, in the following manner:

12.     In the fall of 2016, Plaintiff, attracted by the VFD's mission, applied for membership in the VFD.

13.     Plaintiff, who was at that time a student enrolled in Westminister College, began attending VFD meetings and trainings.

14.     Plaintiff fulfilled the probation requirements, enrolled in and completed National Fire Protection Association standard for firefighter professional qualifications (NFPA 1001) training at the Lawrence County Fire Academy instructed by and through VFD,  graduating at the top of her class and achieving full membership in the VFD.

15.     Plaintiff then went on to take state certification exams, and was certified as a Firefighter One by the Commonwealth of Pennsylvania.          **(See Exhibit A)**

16.     Plaintiff poured herself into her duties as a member of the VFD – she was often to the first to arrive to meetings and trainings, and the last one to leave, and consistently volunteered to perform the most difficult and dangerous tasks during calls and training exercises.

17.     Although the defendant Board is a board in the traditional sense would not have much, hands on day-to-day operation, this board by-laws of the organization and by conduct has direct dealing, and supervision, and a duty to protect individual members like Plaintiff.

18.     Eventually however, Plaintiff's enthusiasm was met with ambivalence and outright hostility by defendant officers and certain of the almost exclusively largely male membership and exclusively management (Board and all Officers) of the VFD.

19.     As an example, on one occasion a member of VFD stated to Plaintiff: "[when with a sexual partner] you will have to get used to putting a lot of things in your mouth".

20.     On another occasion Plaintiff's fire helmet was zip-tied to her gear rack before and during the duration of an emergency structure fire call to which VFD responded.

21.     Pursuant to the VFD handbook, Plaintiff reported this offense to Chief John DiCola.

22.     Despite Plaintiff's reports, neither Chief DiCola nor the Board of the VFD took reasonable actions, and instead made light of the Plaintiff's concerns rather than sanction the offender.

23.     Plaintiff soon learned that several members of the VFD resented that a young enthusiastic woman was "showing them up" and, by their way of thinking threatening to "replace them" in esteem, recognition or other.

24.     VFD management and Board was well aware that Plaintiff was relying on the benefits and emoluments of membership in the VFD to pursue the possibility of a career in firefighting.

25.     Although the Plaintiff, wanting to fit in, went along and ignored most of this, plaintiff believes and therefore avers that it was the common plan and scheme the group defendants to eventually "force her out".

26.     In the early months of 2020, Plaintiff's counsel was indirectly was contacted by an official of the local emergency management organization with an emergency notice  indicating that the Board and Officers already had or would imminently schedule an immediate meeting for the purpose of immediately permanently eliminating Plaintiff from the fire department, in an emergency ex parte "Star Chamber" style proceeding, based upon an allegation that Plaintiff was and to this day was unaware of (the infraction, accusation, the accuser, the witness, or any other detail.

27.     The official continued that Plaintiff had been accused of an infraction, and that the Board would shortly convene a meeting to permanently terminate her membership, all of which is in violation of" their duty and public claims of: concern for

individual members, mentor program, fairness, graduated rehabilitative sanction schedule, practices with others, policies, handbook, by-laws, etc.  **(See Exhibit B and C)**

28.     Plaintiff was further advised that her best option would be to immediately resign, and possibly reapply in a couple years.

29.     Plaintiff refused to do so, firmly believing she had done nothing wrong, and never having been informed what she was accused of.

30.     Plaintiff sought legal advice, and a letter was sent to the defendants, indicating that Plaintiff and her counsel were aware that some type of an allegation had been made, disputed the veracity of any allegation, and requesting that the matter be handled with appropriate process. (See Exhibit A)

31.     Plaintiff further expressed concern that, in moving for immediate termination, the VFD was also in violation of its own policies in regard to progressive discipline among other things.

32.     As a result of the discussions between counsel, Plaintiff believed that false allegation against her had been dropped.

33.     Plaintiff believed that the matter was behind everyone, and she would proceed continue to be a good, dedicated, courageous, first responder.

34.     Thereafter, although the parties appeared to be getting along in the spirit associated with Exhibit A, was working, in hindsight, Plaintiff believes and therefore avers, that all defendants had conspired, and adopted a common plan and scheme, to "set up" the plaintiff, and terminate her membership in the organization by orchestrating, and seizing upon any opportunity whatsoever.

35.     Plaintiff believes, and therefore avers, that discovery will develop that most if not all of the defendants, at that time and/or later adopted a vindictive attitude, to hurt the plaintiff is much as possible.

36.     Defendant were aware that Plaintiff wanted to make a career of this line of work, and whatever punishment they would mete out, they desired to make sure that you would prevent her from reestablishing in another department, or becoming a professional.

37.     In July of 2020, Plaintiff routinely went to the fire station.

38.     When Plaintiff's electronic key did not work, apparently this situation happens naturally some time and needs re-set, so she routinely texted to have the key reset, and without more received a text indicating she was permanently terminated. .

39.     In that text, Plaintiff was informed for the *first time* without more, that her membership with the VFD had already been permanently terminated.

40.     Although on the advice of counsel she respected what (at that time) she hoped was a temporary suspension, pending some kind of hearing on (1) whether or not the event occurred at all as well as (2) what the rehabilitation or sanction may or may not be as guaranteed in the Defendant's own bylaws, hand book, policies, practices, and public perceptions advanced by the Defendants, she was never presented more of heard by the defendants.  Simply stated plaintiff believes and therefor avers that at least some of the defendants did not want to hear from her.

41.     Plaintiff believes and therefore avers, that the defendants chose to make an "object lesson" of the plaintiff, for reasons which include without limit: her standing up to them on the earlier incident; to further advance the collective common plan and

scheme of the various cultivated board members and officers, to *maintain control* over the volunteer fire company, and purposefully place on full and public display their designed, premeditated, insensitive, firm, and ruthless hand.

42.   Plaintiff believes and therefore avers that all of the defendants were aware of or made aware of her future professional plans, and to further inflict maximum harm on her, vindictively and ruthlessly violated their own by-laws and practices and instead chose the outrageous "permanent termination without hearing" sanction.

43.   Plaintiff was not suspended pending hearing or other, and instead, collectively by design, of some or all of defendants: permitted *absolutely no opportunity* to know, much less confront her accusers, deny, disprove, mitigate, get help and instead have all of her many positive accomplishments be forever tarnished or destroyed.

44.   After waiting for a hearing and none ever occurred, she filed a writ (only) to get some fair relief by hearing or other and that did not work either.

45.   The Defendants instead hired counsel and escalated the litigation because their counsel filed a deadline pleading requiring her to go further and file this formal complaint.                                                    **(See Exhibit D Correspondence)**

46.   Apparently Plaintiff was accused of having a piece of training equipment in her automobile, which she had seen others do repeatedly to practice with on her own time, and her membership in the organization had been unilaterally terminated without any process whatsoever.

47.   To this very day, the plaintiff has never been informed in a clear and concise manner of what she allegedly did or did not do, has never had the opportunity to be heard in any way whatsoever for purposes of denying, defending, mitigating, or

in any other way affecting the extreme result, all of which are guaranteed in the handbook and bylaws of the defendants own rules.

48.     The only thing she has ever heard from the defendants came in a writing February 20, 2020: *"The Board of Directors… recently met, and has decided on a response to your recent activity during the training night of January 7, 2020. Actions such as this are detrimental to the health, and safety to yourself as well as others. Any further violations of the department bylaws, standard operating guidelines, or officer's orders could result in disciplinary action(s), including complete removal from the fire department."*

49.     Approximately 5 months later, in the only other (undated) communication ever received by the Plaintiff, notwithstanding the vague text described previously in this complaint, the defendants further state: *" it has been brought to the attention of the Neshannock Township Volunteer Fire Company Board of Directors that on July 20, 20 20, you took critical safety equipment off of fire apparatus and removed it from the fire station without authorization. After an investigation of this report, you have been determined to be in violation of the membership policy. 701 which is attached for your review. The board of directors voted on July 27, 2022 terminate your membership in the Neshannock Township Volunteer fire company, effective immediately. Consequently, you should do the following: (1) within 24 hours of your receipt of this letter, contact the Neshannock Township Police Department to arrange a time during business hours to return all fire company equipment in your possession…2. Cease-and-desist any representation that you are a current member of the Neshannock Township Volunteer Fire Company. 3. Cease-and-desist all forms of communication that suggest you are a current member of the Neshannock Township Volunteer Fire Company, including all social media profiles, posts, or references. 4. Provide to the Neshannock Township Police Department a list of*

*your personal property that you believe to be in the fire station(s) so we may attempt to locate the items and return them to you. Your prompt attention to these matters is requested. Sincerely, Ed Harris Secretary."*

50.     It is apparent that all of the defendants had extensive direct discussions publication, or republication concerning these matters, including to the very small community members over several months.

51.     Plaintiff believes and therefore avers that in those discussions, they would naturally need to justify their extreme actions in ways which will be proven to be, defamatory, untrue, false light, and cause tortious interference with significant contract and property rights.

52.     Plaintiff is well known in the community, and supported because of her gender, and her intense desire and simply stated, her termination raised a lot of eyebrows.

53.     All of the defendants, count heavily on positive public perception, and they would need to destroy the plaintiff, to maintain good public standing, necessary for their public relations, fundraising, and securing taxpayer dollars, etc.

54.     Plaintiff believes and therefore avers that this is in impeded and otherwise prevented her from securing employment opportunities within the community.

## COUNT I – ALL DEFENDANTS BREACH OF CONTRACT AND BREACH
## OF DUTY OF GOOD FAITH

55.     Plaintiff incorporates all prior Paragraphs by reference as though fully set forth herein.

56.     Per the facts above, Plaintiff and Defendant entered into a binding, oral contractual relationship agreement. Such could only be terminated for actual cause and with adequate due process including notice and an opportunity to be heard.

57.     Consideration was exchanged.

58.     The Defendant's unjust, unwarranted, improper and illegal termination of Plaintiff is in material breach of their agreements and the Plaintiff is entitled to reasonable damages.

59.     Defendant's claimed that Plaintiff was terminated for a cause. The claimed "cause" of the termination, however, is false and never occurred. There is no valid cause for termination. Further Plaintiff was given no due process or opportunity to be heard by Defendant.

60.     In this case, it was pre agreed between the parties that Plaintiffs could only be discharged for a valid cause and would have real due process, but the claimed causes were false and a fraud, thus the termination is improper.

61.     Further, if satisfaction of relationship is to be determined by meeting certain tests, the employment may not be terminated until such tests have been made. Jacobs v. Kraft Cheese Co., 310 Pa. 75, 164 A. 774 (1933). In this case, part of the cause given was the violation of a vague standard like bad "conduct", with Plaintiff being given no due process or opportunity to confront her accusers or be heard by her superiors.

62.    Also, Defendant violated their own policy by creating an abusive environment in violation of the express terms thereof.  The personal policy as stated above promises no sexual or other harassment will occur, but this promise was also materially breached and that standard was clearly violated.

63.    Defendant's actions as described above are also in material breach of, "the duty of good faith and fair dealing that is implied in express contracts in Pennsylvania". Livingstone v. North Belle Vernon Borough, 91 F.3d 515 (3d Cir. 1996).  They breached this duty by their evasion of the spirit of the bargain, their lack of diligence and negligence as described above, and their willful rendering of imperfect performance. Somers v. Somers, 418 Pa. Super. 131 (1992).

**WHEREFORE** Plaintiffs respectfully requests this Honorable Court grant them judgment in excess of jurisdictional limits for compensatory damages, consequential damages, future earnings, lost wages, bonus payments, interest, attorney fees, and costs.

## COUNT II – ALL DEFENDANTS RETALIATORY DISCHARGE AGAINST PUBLIC POLICY

64.    Plaintiff incorporates all prior Paragraphs by reference as though fully set forth herein.

65.    If a violation of a clear mandate of public policy results in the termination of (even an) at-will employee, that employee would have a right of action for wrongful discharge.  Rothrock v. Rothrock Motor Sales, Inc., 584 Pa. 297, 883 A.2d 511 (2005).

14

Public policy prohibits retaliatory discharge of an employee on a number of grounds. 29 P.L.E. LABOR § 79;  Highhouse v. Avery Transp., 443 Pa. Super. 120, 660 A.2d 1374 (1995).

66.     Having been willing to risk her life in the line of duty for years, being terminated in this manner is a violation of public policy.

67.     Plaintiffs discharge was arbitrary, capricious and without good cause, in breach of the relation agreement and all rules described above.

68.     The failure and refusal by the Defendants to honor and comply with its oral, and written agreement, advertised practices, policies, by laws, hand book, and with its promises to Plaintiff constitute knowing, willful and bad faith conduct.

69.     As a direct and proximate result of the foregoing breaches of express and implied contractual obligations by the Defendant, Plaintiff has been injured and damaged by loss of her opportunity, employment, earnings, other benefits, moving and relocation costs, and expenses in seeking further employment, as well as the incursion of debt and other costs and losses associated with the wrongful, unconstitutional termination.  As a direct and proximate result of said breaches, Plaintiff sustained other injuries as may be discovered.

WHEREFORE, Plaintiff respectfully requests this Court to:

(a) enter judgment in favor of Plaintiff in excess of jurisdictional limits for injuries, losses and damages determined to have been sustained by Plaintiff

15

as a result of the Defendants breaches described herein plus costs together

with interest;

(b) punitive damages; and

(c) an award of costs and attorney's fees.

## COUNT III– ALL DEFENDANTS QUASI CONTRACT, UNJUST

## ENRICHMENT AND PROMISSORY ESTOPPEL

70.     Plaintiff incorporates all prior Paragraphs by reference as though the same

were more fully set forth therein.

71.     Alternatively, if this Honorable Court should believe that no agreement,

relationship, or contract exists, although Plaintiff vigorously exhorts the Court to find

the existence and enforceability of same, Plaintiff should not be without recourse.

Accordingly, Plaintiff pleads an equitable count for Quasi Contract and Promissory

Estoppel.

72.     Under Pennsylvania law, "when a person receives a benefit from another,

(Plaintiff's 24/7 on call obligation to risk her life and other benefits) and it would be

unconscionable for the recipient to retain that benefit, the doctrine of unjust

enrichment requires the recipient to make restitution.... This equitable doctrine

imposes on the recipient an obligation in the nature of quasi contract." <u>Myers-</u>

Macomber Engineers v. M.L.W. Construction Corp., 271 Pa.Super. 484, 414 A.2d 357 (1979).

73.     The doctrine of promissory estoppel can sometimes be used to enforce a promise that induced justifiable reliance even where there is not consideration.  Similarly, the concept of unjust enrichment serves the purpose of allowing for the enforcement of obligations that may not qualify as contractual.

74.     However, restitution for unjust enrichment is *not* predicated on a promise but on the restoration of an unfair gain. The cause of action of **unjust enrichment** arises where one party has obtained a benefit at the expense of another under circumstances that make it unfair for the recipient to retain the benefit without paying for it.  The Defendants had the benefit of valuable service performed by the Plaintiff throughout her employment, including training and hours of volunteer maintained services and on call status. For years, Plaintiff made it a habit to refrain from: family dinners, weekend vacations, visits, entertainment if the location were "out of call" range..

75.     In Pennsylvania, where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred. Schenck v. K.E. David, Ltd., 446 Pa.Super. 94, 666 A.2d 327 (1995).

76.     The elements necessary to prove unjust enrichment are all present in this case :

        a. benefits conferred on defendant by plaintiff;

b. appreciation of such benefits by defendants; and

c. acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Id.

77.     In determining if the doctrine applies, the court's focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. Id., 666 A.2d at 328. Accord Torchia v. Torchia, 346 Pa.Super. 229, 499 A.2d 581, 582 (1985) ("[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.' ")

78.     There can be no doubt that the Plaintiff conferred a benefit on the Defendants as they preserved and worked above and beyond the call of duty in a sexually and physically abusive environment which appreciated to the Defendant's monetary benefit, as a direct result of Plaintiff's hard work, knowledge, and attained skill, expertise, and enthusiasm..

79.     Furthermore, it would be inequitable for Defendants to retain the benefit without payment of value and at least compensation to Plaintiff and fulfillment of the relationship and agreement and contract that she would be employed and only terminated for cause and/or leave with at least an opportunity work elsewhere where in this profession.

80.    Promissory estoppel is an outgrowth of equitable estoppel but, unlike equitable estoppel, promissory estoppel may serve as an independent cause of action. Paul v. Lankenau Hospital, 375 Pa. Superior Ct. 1, 543 A.2d 1148 (1988).  Pennsylvania has long recognized promissory estoppel as a vehicle by which a promise may be enforced in order to remedy an injustice. See Fried v. Fisher, 328 Pa. 497, 196 A. 39 (1938).

81.    There is clearly an injustice to the Plaintiff, as Defendants promised a relationship and ability to gain experience and marketability at least as well as employment and an on-going opportunity.  She was very successful.  Defendants, though, permitted her to be harassed and abused and then terminated permanently without cause, alleging a bogus cause, and did not grant any due process or any opportunity to be heard.

82.    Defendants made promises that would reasonably be expected to induce action or forbearance on the part of the promise; the Defendants and agents of Defendants directly and by inference always promised the opportunity/job as long as Plaintiff performed appropriately which she did do.

83.    Plaintiff actually took action or refrained from taking action in reliance on the promise, throwing herself exclusively into her work for only these Defendants despite its danger.

84.   Injustice can indeed be avoided by enforcing the promise, and forcing the Defendants to pay compensation and damages to compensate for the windfall benefit they obtained.

85.   As a direct and proximate result of the Defendants misrepresentations and Plaintiffs' reliance on them, Plaintiff has been injured and damaged by loss of her opportunity and employment, earnings, other benefits including without limit: employment benefits, expenses in seeking further employment, the incurrence of debt and other costs and losses and have suffered and continue to suffer severe emotional distress, mental suffering and pain, embarrassment and humiliation, anguish and anxiety. As a direct and proximate result of these misrepresentations, and their reliance on them, Plaintiff has sustained other injuries as may be discovered.  Plaintiff demands damages from the Defendants for all of said injuries.

86.   In light of the Defendants knowing, willful, deliberate and bad faith misrepresentations and outrageous conduct done in contempt of Plaintiffs' rights, the Plaintiff  believes and therefore avers that  she is entitled to an award of punitive damages, and demands same from the Defendants.

**WHEREFORE** Plaintiffs respectfully requests this Honorable Court grant them judgment in excess of jurisdictional limits  for compensatory damages, consequential damages, future earnings, lost wages, punitive damages, interest, and costs, and attorney fees.

20

## COUNT IV – ALL DEFENDANTS FALSE LIGHT AND INVASION OF PRIVACY

87.     Plaintiff incorporates all prior Paragraphs by reference as though the same were more fully set forth therein.

88.     One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if the false light in which the other was placed would be highly offensive to a reasonable person, and the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.  Krajewski v. Gusoff, 2012 PA Super 166, 53 A.3d 793 (2012) (citing Restatement (Second) of Torts, § 652E).  48 P.L.E. TORTS § 125 (2017).

89.     Defendant's statements, including without limit regarding the fact that the plaintiff believes and therefore avers statements must have been made by all, or at least most defendants which statements must have been outrageously untrue to raise to the level of a permanent termination without hearing, causing Plaintiff to be dismissed for alleged cause and directly made, published, and republished throughout the organization and to the general public would be a  major misrepresentation of her character and activities such that serious offense may reasonably be expected to be taken by a reasonable person.

90.     What makes this more outrageous, and actionable, is that it was designed for vindictive purposes, and to maintain power in a voluntary organization, by a

select, cultivated few ie these defendants.

**WHEREFORE** Plaintiff respectfully requests this Honorable Court grant her

judgment in excess of jurisdictional limits for compensatory damages, punitive

damages, interest. Costs, and attorney fees.

### COUNT V. ALL DEFENDANTS DEFAMATION – LIBEL AND SLANDER

91.     Plaintiff incorporates all prior Paragraphs by reference as though the

same were more fully set forth therein.

92.     Plaintiff believes and therefore avers that discovery will develop and

prove, that most if not all defendants stated, directly, indirectly, by inference, by

innuendo, published and republished untrue, defamatory statements, in order to

raise to a level of termination without a hearing, to justify themselves, and to

purposefully injure the plaintiff, at all time, knowing the statements were untrue and

defamatory.

93.     The statements which are identified in paragraphs 90 above were made

by Defendants intentionally, willfully, and maliciously, and were made with Their

knowledge of their falsity or with reckless disregard for their truth or falsity.

94.     Defendant's statements are actionable per se and slanderous per se.

95.     Plaintiffs believe and therefore aver that all defendants vocalized and

publically spread and published this cruel rumor to numerous other persons, and

numerous other false stories and allegations, both orally and potentially on

22

republished social media in writing. Discovery will shed light on the extent of the publication of these false allegations, and each defendant.

96.     Notwithstanding a written warning, by plaintiff's counsel a year in advance, defendants published and republished defamatory statements referred to above, in an obvious desire to be vindictive.

97.     As a direct and proximate result of the false, misleading and malicious statements of Defendants to the relevant authorities and to others in the community, Plaintiff has suffered and continues to suffer serious and irreparable injury to her name and personal and professional reputation.

98.     As a direct and proximate result of the conduct of Defendants, Plaintiff has been and is greatly injured in her good name, credit and reputation, to their great financial loss and damage.

99.     As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered severe emotional distress, pain, anguish, humiliation and embarrassment and various potential physical injuries resulting from the severe emotional distress they have suffered including, but not limited to, nausea, headaches, sleeplessness, etc.

100.    Solely as a result of the aforesaid injuries, Plaintiff has been and in the future will be required to incur significant expenses in seeking and securing medical

and psychological treatment in an effort to recover from the trauma caused by the outrageous, false statements of the Defendants.

101.    Solely as a result of the aforesaid injuries, Plaintiff has been and in the future may be prevented from attending to their usual and customary activities, career occupations and other necessary duties, to their severe financial detriment and loss.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court enter judgment in their favor, in an amount in excess of jurisdictional limits together with punitive damages and costs, interest and attorneys' fees.

## COUNT VI – ALL DEFENDANTS NEGLIGENT, RECKLESS OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

102. Plaintiff incorporates all prior Paragraphs by reference as though the same were more fully set forth therein.

103.    . As a direct and proximate result of Defendant's intentional, reckless and/or negligent conduct described above Plaintiffs' have experienced severe emotional distress and extreme mental pain and suffering with physical manifestations.

**WHEREFORE,** Plaintiffs claims compensatory and punitive damages from the Defendant in excess of jurisdictional limits, punitive damages, and attorney fees..

## COUNT VII ALL DEFENDANTS

### *Common Law and Statutory Wrongful Termination in Violation of Public Policy*

104.    All prior paragraphs are incorporated by reference.

105.    Plaintiff was employed by Defendant as a Volunteer Fire Fighter.

106.    Without cause, Defendants published false and defamatory statements stigmatizing Plaintiff.

107.    Defendants' statements implied that Plaintiff was guilty of wrongdoing and that her membership in the VFD had been terminated as a result.

108.    Defendants' stigmatization of Plaintiff interfered, and continues to interfere with her pursuit of employment in her chosen profession.

109.    Defendants are in breach of their own bylaws, and both, and contractually improperly terminated, plaintiff causing her significant losses, including without limit her investment of time, effort, training and equipment.

**WHEREFORE,** Plaintiff, Anne M. Papa, respectfully requests judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and injunctive relief reinstating her to active membership, and other damages as the Court deems appropriate.

## COUNT VIII ALL DEFENDANTS
### *Common Law and Statutory Breach of Contract*

110.    All prior paragraphs are incorporated by reference.

**111.**        Plaintiff's membership in the VFD was terminated without cause in violation of contract, common law, handbook, by laws, and public policy.

**WHEREFORE**, Plaintiff, Anne Papa, respectfully requests judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and prospective injunctive relief and other damages as the Court deems appropriate.

## COUNT IX ALL DEFENDANTS

### *42 U.S.C. § 1983 - Depravation of a Protected Liberty Interest in Violation of the 14th Amendment*

112.    All prior paragraphs are incorporated by reference.

113.    Plaintiff was employed by Defendant as a Volunteer Fire Fighter.

114.    Defendants published false and defamatory statements stigmatizing Plaintiff.

115.    Defendants' statements implied that Plaintiff was guilty of wrongdoing and that her membership in the VFD had been terminated as a result.

116.    Defendants' stigmatization of Plaintiff interfered, and continues to interfere with her pursuit of employment in her chosen profession.

**WHEREFORE**, Plaintiff, Anne M. Papa, respectfully requests judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and injunctive relief reinstating her to active membership, and other damages as the Court deems appropriate.

## COUNT X ALL DEFENDANTS

### *42 U.S.C. § 1983 – Discrimination on the Basis of Sex in Violation of the 14th Amendment Equal Protection*

117.    All prior paragraphs are incorporated by reference.

118.    Plaintiff was subjected to a hostile work environment in the form of sexist comments on the basis of her sex in violation of the 14th Amendment.

119.    Plaintiff was subjected to disparate treatment in that she was subjected to harsher discipline than similarly situated male members of the VFD

**WHEREFORE,** Plaintiff, Anne Papa, respectfully requests judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and prospective injunctive relief and other damages as the Court deems appropriate.

### COUNT XII ALL DEFENDANTS

### *42 U.S.C. § 1983 – Deprivation of Due Process in Violation of the 14th Amendment*

120.    All prior paragraphs are incorporated by reference.

121.    Plaintiff's membership in the VFD was terminated without a hearing or any process, on the strength of a mere accusation, in violation of her rights under the 14th Amendment.

WHEREFORE, Plaintiff, Anne Papa, respectfully requests judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and prospective injunctive relief and other damages as the Court deems appropriate.

### COUNT VIII ALL DEFENDANTS

*Discrimination on the Basis of Sex in Violation of the Pennsylvania Human Relations Act*

122.    All prior paragraphs are incorporated by reference.

123.    Plaintiff was subjected to a hostile work environment in the form of sexist comments on the basis of her sex in violation of the 14th Amendment.

124.    Plaintiff was subjected to disparate treatment in that she was subjected to harsher discipline than similarly situated male members of the VFD

**WHEREFORE**, Plaintiff, Anne Papa, respectfully requests judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, attorneys' fees, declaratory and prospective injunctive relief and other damages as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED ALL ISSUES.**

Respectfully submitted:

Angelo Papa, Esquire
Attorney for Plaintiff

s/ *Alexander H. Lindsay*
Alexander H. Lindsay, Esquire
Attorney for Plaintiff

s/ *Max B. Roesch*
Max B. Roesch, Esquire
Attorney for Plaintiff

28

## <u>VERIFICATION</u> <sub>122920</sub>

I verify that the statements made in the foregoing documents are true and correct to th best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

12-22-2020

DATE

X

NAME

## IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

ANNE M. PAPA                              :
                                          :
           Plaintiff                :
                                          :
VS.                                       :    NO. 10701 OF 2020 CA.
                                          :
                                          :
NESHANNOCK VFD;                           :
NESHANNOCK VFD BOARD;                     :
CHIEF JOHN DiCOLA,                        :
   in his individual and official capacities,:
DEPUTY BRADLEY SHAFFER                    :
   in his individual and official capacities,:
DEPUTY BRIAN MELCER                       :
   in his individual and official capacities,:
                                          :
        Defendants                :    **JURY TRIAL DEMANDED**

Bruce E. Rende Esq.
500 Grant Street Suite 2300
Pittsburg, pa. 15219
412 281 5434
Fax 412 281 3711
brende@rlmlawfirm.com

### NOTICE OF PRESENTMENT

Kindly take note that the Complaint will be presented in THE PROTHNOTARY on or

about the 22 day of DECEMBER, 2020.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated below, a true and correct copy

of the attached document was served upon Plaintiff at the address indicated above.

Date: 12/22/20

30

# Exhibits

## Annie Credentials



# Emergency Management Institute

0.3 IACET CEU



## FEMA

This Certificate of Achievement is to acknowledge that

**ANNE PAPA**

has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-00700.a**

**National Incident Management System (NIMS)**

**An Introduction**



*Issued this 14th Day of February, 2018*

Tony Russell
Superintendent
Emergency Management Institute

# Emergency Management Institute

0.3 IACET CEU

This Certificate of Achievement is to acknowledge that

## FEMA



**ANNE PAPA**

has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-00100.b**
**Introduction to Incident Command System**
**ICS-100**

*Issued this 13th Day of February, 2018*



Tony Russell
Superintendent
Emergency Management Institute



BUTLER COUNTY COMMUNITY COLLEGE
AND
PENNSYLVANIA
STATE FIRE ACADEMY

CERTIFICATE OF TRAINING

THIS CERTIFIES THAT

ANNE PAPA

Has successfully completed a State accredited
training course consisting of ___6___ hours of instruction in

HAZARDOUS MATERIALS OPERATIONS REFRESHER J & B

11/14/2017
Date

Brenda M. Richardson, Ed.D.
Vice President of Academic Affairs

State Fire Commissioner



BUTLER COUNTY COMMUNITY COLLEGE
AND
PENNSYLVANIA
STATE FIRE ACADEMY

CERTIFICATE OF TRAINING

THIS CERTIFIES THAT

ANNIE PAPA

Has successfully completed a State accredited
training course consisting of __16__ hours of instruction in

EMERGENCY VEHICLE OPERATOR TRAINING
Pumper, Mobile Water Supply

10/28/2017
Date

Brenda M. Richardson, Ed. D.
Vice President of Academic Affairs

State Fire Commissioner

# BUTLER COUNTY COMMUNITY COLLEGE

### PENNSYLVANIA
#### AND
### STATE FIRE ACADEMY



## CERTIFICATE OF TRAINING

### THIS CERTIFIES THAT

**ANNE PAPA**

Has successfully completed a State accredited
training course consisting of ___52___ hours of instruction in

**EXTERIOR FIREFIGHTER**

03/19/2018
**Date**

*Brenda M. Richardson, Ed.D.*
Vice President of Academic Affairs

Pa State Fire Academy Administrator





BUTLER COUNTY COMMUNITY COLLEGE

AND

PENNSYLVANIA
STATE FIRE ACADEMY

CERTIFICATE OF TRAINING

THIS CERTIFIES THAT

ANNE PAPA

Has successfully completed a State accredited
training course consisting of ___6___ hours of instruction in

HAZARDOUS MATERIALS OPERATIONS REFRESHER J & B

11/13/2018
Date

Belinda M. Richardson, Ed.D.
Vice President of Academic Affairs

Bruce Trego
Pa State Fire Academy Administrator



# Lawrence County Fire Academy

*This certifies that*

## Annie Papa

*has successfully completed*

Lawrence County Fire Academy Recruit Class 10

April 12, 2018

Program Coordinator



# BUTLER COUNTY COMMUNITY COLLEGE

### AND

## PENNSYLVANIA
## STATE FIRE ACADEMY

# CERTIFICATE OF TRAINING

## THIS CERTIFIES THAT

ANNE PAPA

Has successfully completed a State accredited
training course consisting of __16__ hours of instruction in

PUMP OPERATIONS I

06/09/2018
Date

_Belinda M. Richardson, Ed.D._
Vice President of Academic Affairs

Pa State Fire Academy Administrator

# Emergency Management Institute

0.3 IACET CEU

This Certificate of Achievement is to acknowledge that



**FEMA**

**ANNE PAPA**

has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-00100.b**
**Introduction to Incident Command System**
**ICS-100**



*Issued this 13th Day of February, 2018*

Tony Russell
Superintendent
Emergency Management Institute



# BUTLER COUNTY COMMUNITY COLLEGE

AND

## PENNSYLVANIA
## STATE FIRE ACADEMY

### CERTIFICATE OF TRAINING

THIS CERTIFIES THAT

ANNE PAPA

Has successfully completed a State accredited training course consisting of __16__ hours of instruction in

AERIAL APPARATUS PRACTICES

05/25/2018
Date

*Blenda M. Richardson, Ed.D.*
Vice President of Academic Affairs

*Bruce Trego*
Pa State Fire Academy Administrator

# Assignment Results

**Training**
**Neshannock Fire**
**LCFA 2017**

## Annie Papa

**Score: 92%** (46/50)

| | |
|---|---|
| **Assignment:** | ELIS Test |
| **Category:** | Benchmark |
| **Term:** | 1 |
| **Date:** | 01/28/2018 |
| **Points:** | 50 (50 questions) |

| Question | Points | Your Response | | Question | Points | Your Response |
|---|---|---|---|---|---|---|
| | | | | 31 | 1/1 | D |
| **Multiple Choice** | | | | 32 | 1/1 | D |
| 1 | 1/1 | D | | 33 | 1/1 | C |
| 2 | 1/1 | D | | 34 | 1/1 | C |
| 3 | 1/1 | D | | 35 | 1/1 | B |
| 4 | 1/1 | C | | | | |
| 5 | 1/1 | A | | 36 | 1/1 | A |
| | | | | 37 | 1/1 | B |
| 6 | 1/1 | B | | 38 | 1/1 | B |
| 7 | 1/1 | C | | 39 | 1/1 | A |
| 8 | 1/1 | A | | 40 | 1/1 | C |
| 9 | 1/1 | D | | | | |
| × 10 | 0/1 | C | | 41 | 1/1 | B |
| | | | | 42 | 1/1 | C |
| × 11 | 0/1 | B | | 43 | 1/1 | A |
| 12 | 1/1 | C | | 44 | 1/1 | A |
| × 13 | 0/1 | B | | 45 | 1/1 | A |
| 14 | 1/1 | C | | | | |
| 15 | 1/1 | B | | 46 | 1/1 | A |
| | | | | 47 | 1/1 | A |
| 16 | 1/1 | B | | 48 | 1/1 | D |
| 17 | 1/1 | C | | 49 | 1/1 | C |
| 18 | 1/1 | C | | 50 | 1/1 | A |
| 19 | 1/1 | D | | | | |
| 20 | 1/1 | C | | | | |
| 21 | 1/1 | D | | | | |
| 22 | 1/1 | C | | | | |
| 23 | 1/1 | D | | | | |
| 24 | 1/1 | D | | | | |
| 25 | 1/1 | D | | | | |
| × 26 | 0/1 | B | | | | |
| 27 | 1/1 | A | | | | |
| 28 | 1/1 | A | | | | |
| 29 | 1/1 | C | | | | |
| 30 | 1/1 | C | | | | |



# BUTLER COUNTY COMMUNITY COLLEGE

AND

## PENNSYLVANIA
## STATE FIRE ACADEMY

### CERTIFICATE OF TRAINING

#### THIS CERTIFIES THAT

ANNE PAPA

Has successfully completed a State accredited training course consisting of __32__ hours of instruction in

FIREGROUND SUPPORT

02/11/2018

Date

_Belinda M. Richardson, Ed.D._

Vice President of Academic Affairs

Pa State Fire Academy Administrator



BUTLER COUNTY COMMUNITY COLLEGE
AND
PENNSYLVANIA
STATE FIRE ACADEMY

CERTIFICATE OF TRAINING

THIS CERTIFIES THAT

ANNIE PAPA

Has successfully completed a State accredited
training course consisting of ___40___ hours of instruction in

INTERIOR FIREFIGHTER

04/08/2018
Date

Belinda M. Richardson, Ed.D.
Vice President of Academic Affairs

Pa State Fire Academy Administrator

 **SCANNED**        **ORIGINAL**

# Neshannock Township Volunteer Fire Company

# MEMBER HANDBOOK



**Effective Date:  August 2010**



# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

## Table of Contents

| No. Policy | | Page |
|---|---|---|
| INTRODUCTION | | |
| 020 | Member Welcome Message | III |
| 040 | Introductory Statement | IV |
| 051 | Member Acknowledgement Form | V |
| 060 | Public Relations | VI |
| | | |
| MEMBERSHIP | | |
| 101 | Nature of Membership | 1 |
| 102 | Member Relations | 1 |
| 103 | Equal Membership Opportunity | 1 |
| 104 | Business Ethics and Conduct | 2 |
| 106 | Member Medical Examinations | 3 |
| 114 | Disability Accommodation | 3 |
| | | |
| MEMBERSHIP STATUS & RECORDS | | |
| 202 | Access to Personnel Files | 4 |
| 203 | Membership Reference Checks | 4 |
| 204 | Personnel Data Changes | 5 |
| 205 | Introductory Period | 5 |
| 208 | Membership Applications | 5 |
| 209 | Performance Evaluation | 5 |
| 210 | Job Descriptions | 5 |
| 215 | Staffing Program | 6 |
| | | |
| MEMBER BENEFIT PROGRAMS | | |
| 301 | Member Benefits | 12 |
| 306 | Workers' Compensation Insurance | 12 |
| 317 | Life Insurance | 13 |
| 318 | Disability | 14 |
| | | |
| TIMEKEEPING/PAYROLL | | |
| 401 | Timekeeping | 14 |

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
# Member Handbook

| 403 | Paydays | 14 |
| 405 | Membership Termination | 14 |
| 409 | Administrative Stipend Corrections | 15 |

WORK CONDITIONS
| 501 | Safety | 15 |
| 504 | Use of Phone and Mail Systems | 16 |
| 505 | Smoking & Tobacco Products | 16 |
| 508 | Use of Equipment and Vehicles | 16 |
| 512 | Business Travel Expenses | 17 |
| 514 | Visitors in the Workplace | 17 |
| 516 | Computer and Email Usage | 18 |
| 517 | Internet Usage | 19 |
| 518 | Workplace Monitoring | 21 |
| 522 | Workplace Violence Prevention | 21 |
| 526 | Cell Phone Usage | 22 |

LEAVES OF ABSENCE
| 605 | Military Leave | 23 |
| 606 | Medical Leave | 23 |
| 607 | Pregnancy-Related Absences | 24 |

MEMBER CONDUCT & DISCIPLINARY ACTION
| 701 | Member Conduct and Work Rules | 25 |
| 702 | Drug and Alcohol Use | 26 |
| 703 | Sexual and Other Unlawful Harassment | 26 |
| 705 | Personal Appearance | 28 |
| 706 | Return of Property | 29 |
| 708 | Resignation | 29 |
| 710 | Security Inspections | 30 |
| 714 | Drug Testing | 30 |
| 716 | Progressive Discipline | 30 |
| 718 | Problem Resolution | 31 |
| 722 | Workplace Etiquette | 32 |

MISCELLANEOUS
| 800 | Life-Threatening Illnesses in the Workplace | 33 |
| 802 | Recycling | 33 |

ATTACHMENTS    Resolution #2004-14 Smoking and Tobacco Use

# Neshannock Township Volunteer Fire Company Volunteer Fire Company Member Handbook

Welcome to Neshannock Township Volunteer Fire Company.

We believe that every member helps to make Neshannock Township Volunteer Fire Company successful. We hope that you will be proud to be a member of our team.

This handbook describes many of our policies. The handbook also outlines many of the programs and benefits available to eligible members.

The handbook will answer many questions you may have about your membership at Neshannock Township Volunteer Fire Company. We suggest that you become familiar with the handbook as soon as possible.

We hope that your experience here will be challenging, enjoyable, and rewarding. Again, welcome!

Sincerely,

The Officers of the Neshannock Township Volunteer Fire Company

# Neshannock Township Volunteer Fire Company Volunteer Fire Company
## Member Handbook

### INTRODUCTORY STATEMENT

This handbook is designed to acquaint you with Neshannock Township Volunteer Fire Company and provide you with information about working conditions, member benefits, and some of the policies affecting your membership. You should read, understand, and comply with all provisions of the handbook. It describes many of your responsibilities as a member and outlines the programs developed by Neshannock Township Volunteer Fire Company to benefit members. One of our objectives is to provide a work environment that is conducive to both personal and professional growth.

No member handbook can anticipate every circumstance or question about policy. As Neshannock Township Volunteer Fire Company continues to grow, the need may arise and the Fire Company reserves the right to revise, supplement, or rescind any policies or portion of the handbook from time to time as it deems appropriate, in its sole and absolute discretion. Members will, of course, be notified of such changes to the handbook as they occur. Some policies may refer to the Neshannock Township Volunteer Fire Company By-Laws. In such cases where an item is referred to in both the member handbook and the Company By-Laws, the By-Laws shall take precedence.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

### MEMBER ACKNOWLEDGEMENT FORM

The member handbook describes important information about Neshannock Township Volunteer Fire Company. I understand that I should consult the Fire Chief or Board of Directors if I have any questions that are not answered in the handbook.

I became a member at Neshannock Township Volunteer Fire Company voluntarily. I understand and acknowledge that "voluntary" means that I may terminate my membership at any time, with or without cause or advance notice. I also understand and acknowledge that Neshannock Township Volunteer Fire Company may terminate my membership due to infractions of policies and/or Company By-Laws.

I understand and acknowledge that there may be changes to the information, policies, and benefits in the handbook. I understand that Neshannock Township Volunteer Fire Company may add new policies to the handbook as well as replace, change, or cancel existing policies. I understand that I will be told about any handbook changes and that handbook changes can only be authorized by  Neshannock Township Volunteer Fire Company.

I understand and acknowledge that this handbook is not a contract of membership or a legal document. I have received the handbook and realize that it is my responsibility to review and follow the policies contained in this handbook and any changes made to it.

MEMBER'S NAME (printed): _____

MEMBER'S SIGNATURE: _____

DATE: _____

# Neshannock Township Volunteer Fire Company Volunteer Fire Company
## Member Handbook

### PUBLIC RELATIONS

Our citizens are very important to us. Every member represents Neshannock Township Volunteer Fire Company and Neshannock Township to our citizens and the public. The general public judges all of us by how we treat them. One of the highest priorities at Neshannock Township Volunteer Fire Company is to help our citizens and the general public. Nothing is more important than being courteous, friendly, prompt, and helpful to the public.

Your contacts with the public, your telephone manners, and any spoken or written communications with citizens or outside parties reflect not just on you but also on the professionalism of Neshannock Township Volunteer Fire Company. Good public relations can build a better service organization to meet the needs of our citizens.

All of us, together, represent Neshannock Township and the Volunteer Fire Company to others. Please take this responsibility seriously.



VI

# Neshannock Township Volunteer Fire Company Volunteer Fire Company
## Member Handbook

### 101 Nature of Membership

You became a member at Neshannock Township Volunteer Fire Company voluntarily meaning that you are free to resign at any time, with or without cause. Neshannock Township Volunteer Fire Company may terminate your membership due to infractions of policies and/or Company By-Laws.

The policies in this handbook are not intended to create a contract. The policies should not be construed to be a contractual obligation of any kind or a contract of membership between Neshannock Township Volunteer Fire Company and any member. The provisions in the handbook have been developed at the discretion of management and may be amended or cancelled at any time, at the sole discretion of Neshannock Township Volunteer Fire Company.

These provisions replace all other existing policies and practices and may not be changed or added to without the express written approval of the Neshannock Township Volunteer Fire Company.

### 102 Member Relations

We believe that the work conditions and benefits we offer to Neshannock Township Volunteer Fire Company members are best for fire services in the area. If you have concerns about work conditions or benefits we encourage you to express these concerns openly and directly to your supervisor.

Our experience has shown that when members deal openly and directly with management, the work environment can be excellent, communications can be clear, and attitudes can be positive. We believe that Neshannock Township Volunteer Fire Company fully demonstrates its commitment to members by responding effectively to member concerns.

### 103 Equal Membership Opportunity

In order to provide equal membership and advancement opportunities to all individuals, membership decisions at Neshannock Township Volunteer Fire Company will be based on merit, qualifications, and abilities subject to the provisions of any applicable rules or standards as outlined in the Company By-Laws. Neshannock Township Volunteer Fire Company does not discriminate in membership opportunities or practices on the basis of race, color, religion, sex, national origin, age, disability, or any other characteristic protected by law.

1

# Neshannock Township Volunteer Fire Company Volunteer Fire Company Member Handbook

We will make reasonable accommodations for qualified individuals with known disabilities unless doing so would result in an undue hardship. This policy covers all aspects of membership, including selection, job assignment, discipline, termination, and access to benefits and training.

If you have a question or concern about any type of discrimination in the workplace, you are encouraged to bring the issue to the attention of your supervisor or the Board of Directors. At Neshannock Township Volunteer Fire Company, be assured that you can raise concerns and make reports without fear of reprisal. Further, anyone found to be engaging in any type of unlawful discrimination will be subject to disciplinary action, up to and including termination of membership.

## 104 Business Ethics and Conduct

We expect Neshannock Township Volunteer Fire Company members to be ethical in their conduct. It affects our reputation and success. Neshannock Township Volunteer Fire Company requires members to carefully follow all laws and regulations, and have the highest standards of conduct and personal integrity.

Our continued success depends on our citizen's trust. Members owe a duty to Neshannock Township Volunteer Fire Company, and our citizens to act in ways that will earn the continued trust and confidence of the public.

As an organization, Neshannock Township Volunteer Fire Company will comply with all applicable laws and regulations. We expect all members, agents and representatives of the Company to conduct business in accordance with the letter, spirit, and intent of all relevant laws and to not do anything that is illegal, dishonest, or unethical.

If you use good judgment and follow high ethical principles, you will make the right decisions. However, if you are not sure if an action is ethical or proper, you should discuss the matter openly with your supervisor. If necessary, you may also contact the Fire Chief or Board of Directors for advice and consultation.

It is the responsibility of every Neshannock Township Volunteer Fire Company member to comply with our policy of business ethics and conduct. Members who ignore or do not comply with this standard of business ethics and conduct may be subject to disciplinary action, up to and including possible termination of membership.

# Neshannock Township Volunteer Fire Company Volunteer Fire Company
## Member Handbook

## 106 Member Medical Examinations

After we make an offer to an applicant entering a designated job, a medical examination will be performed at our expense by a health professional of our choice. The offer of membership and assignment to duties is contingent upon satisfactorily completing the exam.

In cases where an member has been off of work on a medical leave, Neshannock Township Volunteer Fire Company reserves the right to require a "fitness-for-duty" medical examination.

We consider information about medical conditions or medical history to be highly confidential and keep it separate from other personnel information. Access to this information is limited only to persons who have a legitimate need to know.

## 114 Disability Accommodation

Neshannock Township Volunteer Fire Company is committed to complying fully with the Americans with Disabilities Act (ADA) and ensuring equal opportunity in membership for qualified persons with disabilities.

All membership practices and activities are conducted on a non-discriminatory basis. Our hiring procedures have been reviewed and provide persons with disabilities meaningful membership opportunities. Pre-membership inquiries are made only regarding an applicant's ability to perform the duties of the position. Neshannock Township Volunteer Fire Company is also committed to not discriminating against any qualified member or applicant because the person is related to or associated with a person with a disability. Neshannock Township Volunteer Fire Company will follow any state or local law that provides individuals with disabilities greater protection than the ADA. Please see the Company By-laws for further information regarding disability accommodations.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
# Member Handbook

## 202 Access to Personnel Files

At Neshannock Township Volunteer Fire Company we maintain a personnel file on each member that includes the member application and related documents, training records, performance documentation, salary history, and other membership records.

Personnel files are the property of Neshannock Township Volunteer Fire Company. Because this information is highly confidential and we respect your privacy. No information will be released without written authorization from the member.

If you wish to see your personnel file, contact the Fire Chief. With reasonable advance notice, you may review your own personnel file in our offices and in the presence of a person authorized by Neshannock Township Volunteer Fire Company.

## 203 Membership Reference Checks

To ensure that individuals who join Neshannock Township Volunteer Fire Company are well qualified and have a strong potential to be productive and successful, it is the policy of Neshannock Township Volunteer Fire Company to check the membership references of all applicants.

Neshannock Township Volunteer Fire Company will respond in writing only to those reference check inquiries that are submitted in writing. Responses to such inquiries will confirm only dates of membership and positions held. No membership data will be released without a written authorization and release signed by the individual who is the subject of the inquiry.

## 204 Personnel Data Changes

It is important that Neshannock Township Volunteer Fire Company have certain personal information about you in our records. You need to tell us as soon as there is a change to your mailing address, telephone numbers, marital status, dependents' information, educational accomplishments, and other possibly related information. We also need to have information about who to contact in case of an emergency. To change your personal information or if you have questions about what information is required, contact the Administrative Office.

4

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

### 205 Introductory Period

At Neshannock Township Volunteer Fire Company we want you to be successful in performing your duties. We have found that having a probationary period can be very helpful to new members. The probationary period provides you with the opportunity to demonstrate that you can perform your job at a satisfactory level of performance and to determine if the new duties meets your expectations. We use this period to evaluate your capabilities, work habits, and overall performance as well as allow for the opportunity to complete the require introductory training.

### 208 Membership Applications

Neshannock Township Volunteer Fire Company relies on the accuracy of the information provided on the membership application, as well as the accuracy of other data presented during the hiring process and membership. If there are any misrepresentations, falsifications, or material omissions in any of this information, we may exclude that applicant from further consideration. If the person was already hired, it could result in termination of membership. For more information on the application process see the Company By-laws.

### 209 Performance Evaluations

The best communications about job performance happen on an informal, day-to-day basis. You and your supervisor are strongly encouraged to talk about performance regularly. In addition, Neshannock Township Volunteer Fire Company wants to ensure that you and your supervisor have scheduled formal performance evaluations. These discussions give you both the opportunity to discuss responsibilities and goals, encourage and recognize strengths, identify and correct any weaknesses, develop plans for dealing with any obstacles, and plan for the future. Evaluations are outlined in the Company By-Laws and application process.

### 210 Position Descriptions

Neshannock Township Volunteer Fire Company makes every effort to create and maintain accurate job descriptions for all positions within the organization. Each description includes sections for job information; a job summary (giving a general overview of the job's purpose); essential duties and

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
# Member Handbook

responsibilities; supervisory responsibilities; qualifications (including education and/or experience, language skills, mathematical skills, reasoning ability, and any certification required); physical demands; and work environment.

We use the job descriptions to help new members understand their job duties and to set standards for member performance evaluations. Job descriptions are also used to identify the requirements of each position, establish hiring criteria, and establish a basis for making reasonable accommodations for individuals with disabilities.

The Board of Directors and/or the Fire Chief prepare job descriptions when new positions are created. Existing job descriptions are also reviewed and revised in order to ensure that they are up to date. Job descriptions may also be rewritten periodically to reflect any changes in the position's duties and responsibilities. You can also be helpful by making sure that your job description accurately reflects the work you do.

We would like you to remember that job descriptions do not necessarily cover every task or duty that you might be assigned, and that additional responsibilities may be assigned as necessary. You can contact the Fire Chief if you have any questions or concerns about your job description.

## 215 Staffing Program

Neshannock Township Volunteer Fire Company offers a voluntary staffing program to provide emergency service staffing during targeted hours to better serve the citizens of Neshannock Township without placing an overwhelming financial burden on the Neshannock Township Volunteer Fire Company, Neshannock Township Government, or the Citizens of Neshannock Township.

**Shift Schedule**
Volunteer shifts will run from 0700 hours to 1900 hours (daylight) and from 1900 hours to 0700 hours (night) each day with allowances to leave for work or family commitments when necessary. This shift schedule may be (and should be) examined often to assure that it suits the needs of the company and the availability of the manpower. Shifts are established by the Fire Chief and can be adjusted due to the need and/or financial parameters.
It is recognized that staffing is generally sufficient on business days between 0700 and 1500. However, volunteers will still be asked to fill shifts during business days from 0700-1900 whenever possible. Any additional manpower that can commit to answering calls during daylight hours is a bonus to the company and the community.

6

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

It is overly ambitious to assume that an entire week of 14 shifts could immediately be filled, but it is a commendable benchmark that could be attained over time. A few targeted shifts will initially be scheduled for each week. Additional shifts may be added one at a time as staffing levels permit. Fulltime staffing may take several years to achieve and the Company should be prepared to encounter staffing and availability plateaus throughout the implementation of this program.

### Responsibilities of Shift Volunteers

Members choosing to fill a volunteer shift have only two steadfast responsibilities: to respond to emergency incidents during their shift, and to clean up after yourself. Participants will be required to perform an equipment inspection at the start of their shift to ensure that the equipment they will use during the shift is in working order. Participants will also be responsible for basic housekeeping tasks such as washing the dishes they have used and replacing bed linens after an overnight shift.

As a member of the company, each member *should* feel motivated to contribute to the general success of the company by whatever means necessary, but it is not a requirement. It is recognized that each volunteer is giving up his own free time to fill a shift and should not be expected to do additional "chores" outside of basic personal responsibilities while filling a shift. Motivation cannot be commanded, it can only be encouraged or discouraged.

General expectations of membership still apply:
- Be ready to respond
- Act professionally at all times
- Complete any paperwork in a timely fashion
- Clean up your mess and put it back where you found it
- Respect the facilities that are provided
- Respect the people around you
- Training activities may be instituted as the need arises.

Each volunteer should examine his realistic availability before committing to a shift. Any volunteer who routinely vacates a shift without reasonable cause will be asked to refrain from committing to any shifts until he is able to commit to the entire shift.

The shift abandonment policy will follow a "Three Strikes and You're Out" approach. In addition to forfeiting any incentive points for the abandoned shift, penalties are as follows:

- 1st Offense: Written warning and a three point deduction from any incentive points

- 2nd Offense: Written warning and a five point deduction from any incentive points

- 3rd Offense: Written warning and forfeiture of all accrued incentive points for that year as well as shift ineligibility until the next year.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

Adjustments can be made to shift schedules on a case-by-case basis for those volunteers who have standing commitments to family or employers.

As reasonable compensation for voluntary service, the fire company should be responsible for the supply of:

- Kitchen facilities
- Gender appropriate locker room/shower facilities
- Uniforms
- Lounge facilities
- Fitness equipment
- High speed internet access
- Designated quiet area (ex: training room, when not otherwise in use) for office work or studying
- Gender appropriate sleeping quarters

Certain other supplies and facilities may be provided at the discretion of the fire company. Shift volunteers must provide their own meal, snacks, and hygiene products. Policies regarding the use of any and all facilities will be distributed to each participant.

## Commitment Levels

As a baseline for commitment to the voluntary staffing program, a willing volunteer should be prepared to fill approximately 10 shifts per year. This commitment level has been defined as a participation ability baseline. Participation is certainly encouraged even if this commitment level cannot be met, but higher incentives values will reflect higher levels of commitment.

If a volunteer prefers a more aggressive commitment level, he may choose to strive for 30 shifts per year. A template for this level of commitment might be to fill one overnight shift every other week.

A volunteer may choose to commit to shifts at either of these template levels or hybrid thereof as his personal schedule permits. Volunteers are discouraged from scheduling more than five shifts per month as they are likely to "burn out."

## Command Structure and Response Protocol

A formal Duty Officer schedule is in place. This schedule does not necessarily require officers to staff the station (though they may do so at their discretion) but it does require at least one officer to be available at all times. Duty Officers are expected to respond to any and all true emergencies during their commitment period.

The company provides the Duty Officer with transportation during his commitment period to facilitate his ability to respond directly to an incident in a timely fashion.

Any volunteers staffing the station should respond to an incident according to company policy with the appropriate first-due apparatus. All other personnel should respond to the station and deploy apparatus according to company policy and nature of the incident.

The voluntary staffing program must encourage consistency in all facets of response. Specifically, the few that are staffing the station must feel confident that additional volunteers and a Duty Officer will also



8

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

be responding as well as appropriate *automatic* mutual aid when necessary so that they are not overwhelmed by an incident.

Company-level training must be adapted to reflect the ever-changing methods that are employed to respond to emergencies.

Proposed Additions to the Current Points System

- A point-year begins on October 1 and ends on September 30
- Label points accrued for voluntary staffing as "Shift Points"
- 1 Shift Point may be accrued per voluntary 4 hour shift block
- 2 Shift Points may be accrued per 4 hour voluntary shift block that falls on a holiday (double points for the entire shift up to 12 hours)
- Additional points for additional certification levels at the discretion of the Company leadership

The shift worksheet will be used to track incentive points for each participant. The Duty Officer is responsible for tracking the shifts via the shift worksheet. All shifts and incentive points are subject to verification by Company leadership. The points system is designed to reward *commitment*, not actual responses to emergency incidents.

While tracking attendance of actual emergencies should continue, the voluntary staffing incentive program does not award any points for attending emergency calls and responses. The number of emergency incidents, nature of each incident, time of each incident, and manpower availability are all variables that cannot be controlled. Without the ability to control these variables, it is very difficult to award points fairly across the general membership. For example, one firefighter should not be awarded more points than another simply because his employer permits him to leave work to respond to emergencies and is therefore able to attend a greater percentage of calls. Nor should a firefighter be awarded more points because the voluntary shift he chose to fill ran more calls than any other shift.

*Important Note:* It is generally expected that each member of the company participate in company activities and emergency responses as often and as actively as possible regardless of their choice to fill (or not to fill) a voluntary shift. The fire service is a dynamic environment that requires active participation. A stagnate member is an unsafe liability! It is important to stress that the incentive program is not a form of payroll for those who choose to staff the station. The program is a means to encourage additional participation and to reward those who have voluntarily demonstrated a level of commitment to the company and the community that far exceeds expectation. In simplest language: The general membership should not feel they are entitled to a reward for doing what they already do; they must go above and beyond the minimum membership requirements to serve the community to be eligible for these incentives.

Participation in the program is completely optional to those who meet the eligibility requirements and to those who are prepared to meet the minimum commitment level. This incentive program is not, and will never be, a "pay-per-call," "paid standby," or part-time membership.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

### Eligibility

The objective of this program is to meet the community's need to have emergency service response as quickly as possible. However, the emergency response must be appropriate to the nature of the emergency. It is very clear that not every member of the Neshannock Volunteer Fire Company is able to respond appropriately to every type of incident. It is obvious that the most appropriate members to fill voluntary shifts are those that are apparatus driver/operators, those that can actively participate in fire suppression and vehicle extrication, and those that are certified to perform emergency medical procedures. Support personnel, such as Fire Police are not eligible for this program as they do not meet a specific community need by staffing the fire station.

Participants must be at least 18 years of age and out of high school. Participants are encouraged to have at least one year of service with the Company unless they are already certified.

Upon entering the voluntary staffing program, a participant will have up to two years from his first voluntary shift to obtain both Firefighter I certification and PA Department of Health First Responder (or higher) certification. Higher levels of certification are absolutely encouraged, but are not required for this program. Once obtained, a participant must maintain the required certifications to maintain eligibility. Participants who have not made a reasonable effort to obtain these certifications within two years will be asked to withdraw from the voluntary staffing program and will forfeit all incentive points. Provisional eligibility may be granted to those members who have 15 years of service with the Company on a case-by-case basis.

In the event of over-allocation of voluntary shift personnel, preference will be given to those who are certified to perform emergency medicine and/or those who have more training and experience. The remainder of the over-allocated staff will be asked to reschedule their shift.

### Additional Benefits

Certain other benefits may be realized by the implementation of this voluntary staffing program. One of the most significant of these benefits is the ability to schedule your participation in emergency response. There are a few members who are well trained and very capable of handling most emergencies, but their personal schedules do not permit them to be available when the emergencies occur. For example, a firefighter with children at home may not be able to immediately leave the children so that he may respond to an emergency. But, that same firefighter may be able to schedule a volunteer shift while his children are otherwise cared for. This may help to retain some of those members whose participation slowly dwindles as their family responsibilities grow.

As the population and commercial assets in Neshannock Township grow, it is likely that sometime in the future, the Neshannock Township Volunteer Fire Company will begin to employ career firefighters. This voluntary staffing program is adaptive enough that it may be supplemented with career personnel at any time. While the transition to a combination department would probably not be very easy at first, this system creates a foundation upon which to transform the department from an all-volunteer to a combination mindset. This system may also help to reduce the effect of alienating the volunteers as they will likely still be involved in the department just as actively as career personnel while maintaining fulltime membership elsewhere. Additionally, a successful voluntary staffing program may reduce the financial burden associated with paying a career staff as only part-time positions may be necessary to fill voids in the voluntary staffing schedule.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

### Shift Rules

1. Be on time for your scheduled shift. Do not commit to a shift unless you are able to fill it.
2. If you must leave a shift, notify the duty officer as soon as possible.
3. No sleeping outside the bunkroom.
4. Department issued uniforms must be worn outside the bunkroom and locker rooms.
5. Do your best to conserve energy whenever possible.
6. Clean up after yourself (including running the dishwasher).
7. Change bed linens after an overnight shift.
8. Quiet hours are from 2200 to 0700.
9. No guests are permitted on the premises during quiet hours.
10. No guests are permitted in the bunkroom.
11. No unsupervised training.
12. Return all equipment back to service when finished.
13. Conduct equipment check at the beginning of each shift.
14. Personnel are responsible for their own meals.
15. Squad 159 and C-100 may be used to purchase pick up meals.
16. Personnel are to eat meals on station, but may leave the station to pick up the meals.
17. Personnel will understand how to take and process any emergency and non emergency call that may be reported by the public either by telephone or by walk- ins.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
# Member Handbook

## 301 Member Benefits

Neshannock Township Volunteer Fire Company provides a wide range of benefit programs to eligible members. Certain legally required programs (such as workers' compensation) cover all members in the manner required by the laws.

Your eligibility for each benefit program depends on a variety of factors, including your member classification. To better understand exactly which benefit programs you are eligible for, talk to your supervisor. You will find details about many of these programs elsewhere in the member handbook.

The following benefit programs are available to eligible members, subject to terms and conditions of each program:

* Drug or Alcohol Rehabilitation Program
* Member Assistance Program
* Life Insurance
* Long-Term Disability
* Military Leave
* Short-Term Disability
* Certain Uniforms

While some of the benefit programs we offer may require you to contribute to the cost, many programs are fully paid by Neshannock Township Volunteer Fire Company.

## 306 Workers' Compensation Insurance

Neshannock Township provides a comprehensive workers' compensation insurance program to our members. The workers' compensation program covers injuries or illnesses sustained in the course of membership that require medical, surgical, or hospital treatment. Subject to the applicable legal requirements, this program provides benefits after a short waiting period or, in the event of hospitalization, immediately.

It is critical that you inform your supervisor immediately about any work-related injury or illness, in all cases within 48 hours of the injury, regardless of how minor it might appear at the time. Immediate reporting ensures that, if eligible, you will qualify for workers' compensation benefits as quickly as possible and also lets us investigate the matter promptly.

Workers' compensation is intended to cover only work-related injuries and illnesses. Because of this,

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

neither Neshannock Township Volunteer Fire Company, Neshannock Township nor our insurance carrier will be liable for the payment of workers' compensation benefits for injuries that might occur during members' voluntary participation in off-duty recreational, social, or athletic activities that we may sponsor.

Should a member be injured outside of the company such as at their fulltime employment, the member is not permitted to respond to any calls for service by the Department. The Member may participate in administrative functions if able with the proper medical release documentation.

## 317 Life Insurance

Life insurance offers you and your family important financial protection. Neshannock Township Volunteer Fire Company provides a basic life insurance plan for eligible members.

Eligible members may participate in the life insurance plan subject to the terms and conditions of the agreement between Neshannock Township Volunteer Fire Company and its insurance carrier.

You will find details about the basic life insurance plan including benefit amounts in the Summary Plan Description. If you have questions, contact the Administrative Office for more information.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
# Member Handbook

## 321 Disability Insurance

Neshannock Township Volunteer Fire Company provides both long term and short term disability insurance for all of its members. The types of coverage and extent of the coverage may vary from time to time depending on polices available and purchased by the department. For more information regarding disability coverage contact the Company administrative office benefits administrator.

## 401 Timekeeping (staffing program)

Neshannock Township Volunteer Fire Company has in place a voluntary staffing program. A log of the qualified individuals is kept to track each persons participation in the program. It is the responsibility of the Duty Officer to track his or her shift participation. Individuals wishing to review their log my do so by making a request to their Duty Officer.

## 403 Paydays (stipend for staffing program)

The Neshannock Township Volunteer Fire Company offers a monetary stipend to qualified individuals who participate in the voluntary staffing program. The stipend is issued annually at the end of the shift year in October by the Township.

## 405 Membership Termination

Termination of membership is an inevitable part of personnel activity within any organization, and many of the reasons for termination are routine. These are some of the most common circumstances for membership terminations:

* Resignation - voluntary membership termination initiated by a member.
* Discharge - involuntary membership termination initiated by the organization.
* Retirement - voluntary membership termination initiated by the member meeting age, length of service, and any other criteria for retirement from the organization. For additional information on termination consult the Company By-Laws.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

## 409 Administrative Stipend Corrections

Neshannock Township Volunteer Fire Company takes all reasonable steps to ensure that you receive the correct stipend amount at the end of the stipend year.

In the unlikely event that there is an error in the amount of the stipend you receive, you should promptly advise the administrative offices so that the discrepancy can be corrected as quickly as possible.

## 501 Safety

To assist in providing a safe and healthful work environment for members, customers, and visitors, Neshannock Township Volunteer Fire Company has established a workplace safety program. This program is a top priority at Neshannock Township Volunteer Fire Company. The success of the program depends on the alertness and personal commitment of everyone.

We provide information to members about workplace safety and health issues through regular internal communication channels. These may include member meetings, bulletin board postings, memos, or other written communications.

Members and supervisors receive periodic workplace safety training. The training covers potential safety and health hazards as well as safe work practices and procedures to eliminate or minimize hazards.

You are expected to obey all safety rules and use caution in your work activities. You must immediately report any unsafe condition to the appropriate supervisor. If you violate Neshannock Township Volunteer Fire Company safety standards, cause a hazardous or dangerous situation, or fail to report or, where appropriate, remedy such situations, you may be subject to disciplinary action, up to and including termination of membership.

In the case of an accident that results in an injury, regardless of how insignificant the injury may appear, you should immediately notify the appropriate supervisor. Prompt reporting can ensure legal compliance and quick initiation of insurance and worker's compensation benefits procedures.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

## 504 Use of Telephones

Neshannock Township Volunteer Fire Company telephones are intended for business and member use. We request that you keep any personal local calls to a minimum. You may be required to reimburse Neshannock Township for charges resulting from personal calls.

Because our telephone communications are an important reflection of our image to our citizens and the community, every member should use proper telephone etiquette. Some examples of good telephone etiquette are always using the approved greeting, speaking courteously and professionally, confirming the information you have received from the caller, and only hanging up once the caller has done so.

## 505 Smoking & Tobacco Products

In keeping with Neshannock Township Volunteer Fire Company's intent to provide a safe and healthful work environment, smoking and the use of tobacco products are prohibited throughout the workplace in any building owned by the Township and the Fire Company.

This policy applies equally to all members as well as to the general public.

## 508 Use of Equipment and Vehicles

Equipment and vehicles essential in accomplishing job duties are expensive and may be difficult to replace. When using Neshannock Township Volunteer Fire Company property, you are expected to exercise care, perform required maintenance, and follow all operating instructions, safety standards, and guidelines.

You should notify your supervisor if any equipment, machines, tools, or vehicles appear to be damaged, defective, or in need of repair. Prompt reporting of damages, defects, and the need for repairs could prevent deterioration of equipment and possible injury to members or other people. Your supervisor can answer any questions about your responsibility for maintenance and care of equipment or vehicles you use on the job.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
# Member Handbook

The improper, careless, negligent, destructive, or unsafe use or operation of equipment or vehicles, as well as excessive or avoidable traffic and parking violations, may result in disciplinary action, up to and including termination of membership.

## 512 Business Travel Expenses

Neshannock Township Volunteer Fire Company will reimburse members for reasonable business and training travel expenses when the travel has been approved in advance by the Company. Once your travel plans are approved, you are responsible for making your own travel arrangements.

When approved, we will reimburse the costs of travel, meals, lodging, and other expenses directly related to accomplishing the objective of your trip. Naturally, we expect you will keep expenses within reasonable limits.

In the event that you are involved in an accident while traveling on business or training, immediately report the incident to your supervisor. And, if you use a vehicle owned, leased, or rented by Neshannock Township Volunteer Fire Company, it may not be used for personal reasons unless you have prior approval.

When a business or training trip is over, submit your completed travel expense report within 5 days accompanied by receipts for all individual expenses.

Your supervisor can give you guidance and assistance on procedures related to travel arrangements, expense reports, reimbursement for specific expenses, or any other business or training travel issues.

We consider abuse of this policy to be a very serious matter. This includes falsifying expense reports to reflect costs that were not incurred by you or were not business-related. Therefore, failure to follow this business travel expense policy may be grounds for disciplinary action, up to and including termination of membership.

## 514 Visitors in the Workplace

Many of our facilities are open to the general public.  However, some of the areas of our workplace are closed to the general public.  To better protect the safety and security of members as well as Neshannock Township Volunteer Fire Company property and facilities, only authorized personnel are allowed into certain areas of the workplace that are not open to the general public. Restricting unauthorized visitors helps to maintain safety standards, safeguard member and public welfare, protect equipment and

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

confidential information against theft, and reduce potential distractions and disturbances.

If you see an unauthorized person on Township or Fire Company property in a restricted area, please notify your supervisor immediately or ask the individual if you can help them and direct them away from the restricted area.

## 516 Computer and Email Usage

Neshannock Township Volunteer Fire Company may give members access to computers, computer files, the email system, and software to use in doing their work. Members should not use a password, access a file, or retrieve any stored communication without authorization.

We strive to maintain a workplace that is free of harassment of our members. Therefore, we prohibit the use of computers and the email system in ways that are disruptive, offensive to others, or harmful to morale.

We prohibit displaying, downloading, or emailing sexually explicit images, messages, and cartoons. Other examples of unacceptable computer usage include (but are not limited to) ethnic slurs, racial comments, off-color jokes, or anything that may be seen by another person as harassment or disrespectful.

You may not use email to solicit others for commercial ventures, religious or political causes, outside organizations, or other non-business matters.

Neshannock Township Volunteer Fire Company purchases and licenses the use of various computer software for business purposes and does not own the copyright to this software or its related documentation. Unless the software developer authorizes us, we do not have the right to reproduce the software for use on more than one computer.

You may only use software on local area networks or on multiple machines according to the software license agreement. Neshannock Township Volunteer Fire Company prohibits the illegal duplication of software and its related documentation.

You should notify your supervisor, the Fire Chief or any member of management if you learn about a violation of this policy. Members who violate this policy are subject to disciplinary action, up to and including termination of membership.

**No member using any electronic media owned by the Neshannock Township Volunteer Fire Company, including, but not limited to, computers, personal computers, cell phone or other electronic media devices, shall have any expectation of privacy in any materials**

18

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

stored, sent, received, or processed on any such electronic device.  Neshannock Township Volunteer Fire Company reserves the right, without notice, to inspect, copy, download and act upon any such material regardless of whether such materials are related to the business of the Neshannock Township Volunteer Fire Company or otherwise.

## 517 Internet Usage

Neshannock Township Volunteer Fire Company may provide members with Internet access to help them do their jobs and also as a convenience while on station.  This policy explains our guidelines for using the Internet responsibly and productively.

All Internet data that is composed, transmitted, or received via our computer systems is considered to be part of our official records. This means that it is subject to disclosure to law enforcement or other third parties. Therefore, you should always make sure that the business information contained in Internet email messages and other transmissions is accurate, appropriate, ethical, and lawful.

The equipment, services, and technology that you use to access the Internet are always the property of Neshannock Township Volunteer Fire Company. Therefore, Neshannock Township Volunteer Fire Company reserves the right to monitor Internet traffic. We also reserve the right to retrieve and read any data that is composed, sent, or received through our online connections or is stored in our computer systems.

We do not allow data that is composed, transmitted, accessed, or received via the Internet to contain content that could be considered discriminatory, offensive, obscene, threatening, harassing, intimidating, or disruptive to any member or other person.

Examples of unacceptable content include (but are not limited to) sexual comments or images, racial slurs, gender-specific comments, or other comments or images that could reasonably offend someone on the basis of race, age, sex, religious or political beliefs, national origin, disability, sexual orientation, or any other characteristic protected by law.

Neshannock Township Volunteer Fire Company does not allow the unauthorized use, installation, copying, or distribution of copyrighted, trademarked, or patented material on the Internet. As a general rule, if you did not create the material, do not own the rights to it, or have not received authorization for its use, you may not put the material on the Internet. You are also responsible for ensuring that a person sending material over the Internet has the appropriate distribution rights.

Before you download or copy a file from the Internet, you should take the necessary anti-virus

# Neshannock Township Volunteer Fire Company Volunteer Fire Company
## Member Handbook

precautions. Neshannock Township Volunteer Fire Company requires that all downloaded files be checked for viruses. All compressed files must be checked for viruses both before and after decompression.

Members whose Internet usage violates laws or Neshannock Township Volunteer Fire Company policies are subject to disciplinary action, up to and including termination of membership. Members may also be held personally liable for any violations of this policy.

The following are examples of some actions and activities that are prohibited and which could result in disciplinary action:

* Sending or posting discriminatory, harassing, or threatening messages or images
* Stealing, using, or disclosing someone else's code or password without authorization
* Copying, pirating, or downloading software and electronic files without permission
* Sending or posting confidential material or proprietary information online
* Violating copyright law
* Sending or posting messages or material that could damage the Township's or Fire Company's image or reputation
* Participating in the viewing or exchange of pornography or obscene materials
* Sending or posting messages that defame or slander other individuals
* Attempting to break into the computer system of another organization or person
* Refusing to cooperate with a security investigation
* Using the Internet for political causes or activities, religious activities, or any sort of gambling
* Jeopardizing the security of the organization's electronic communications systems
* Engaging in any other illegal activities

**No member using any electronic media owned by the Neshannock Township Volunteer Fire Company, including, but not limited to, computers, personal computers, cell phone or other electronic media devices, shall have any expectation of privacy in any materials stored, sent, received, or processed on any such electronic device. Neshannock Township Volunteer Fire Company reserves the right, without notice, to inspect, copy, download and act upon any such material regardless of whether such materials are related to the business of the Neshannock Township Volunteer Fire Company or otherwise.**

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

## 518 Workplace Monitoring

Neshannock Township Volunteer Fire Company may conduct workplace monitoring to help ensure quality control, member safety, security, and customer satisfaction.

The computer equipment and systems and Internet access that members may use are always the property of Neshannock Township Volunteer Fire Company. Therefore, we reserve the right to monitor computer activities. We also reserve the right to retrieve and read any computer files or data that are composed, sent, or received through Internet connections or stored in our computer systems.

We also conduct video surveillance of non-private workplace areas. We use video monitoring to identify safety concerns, maintain quality control, detect theft and misconduct, and discourage and prevent acts of harassment and workplace violence.

Because we are sensitive to the legitimate privacy rights of our members, we will make every effort to guarantee that workplace monitoring is always done in an ethical and respectful manner.

## 522 Workplace Violence Prevention

Neshannock Township Volunteer Fire Company is committed to preventing workplace violence and to maintaining a safe work environment. We have adopted the following guidelines to deal with intimidation, harassment, or other threats of (or actual) violence that might occur on our premises.

All members, including supervisors, should be treated with courtesy and respect at all times. Members are expected to refrain from fighting, "horseplay," or other conduct that may be dangerous to others. Even if an member is licensed to carry a concealed weapon, the member may not bring the weapon onto Neshannock Township Volunteer Fire Company premises (except as required for use by authorized police personnel).

Neshannock Township Volunteer Fire Company will not tolerate conduct that threatens, intimidates, or coerces another member or a member of the public at any time, including off-duty periods. This includes all acts of harassment, including harassment that is based on an individual's sex, race, age, or any characteristic protected by federal, state, or local law.

All threats of (or actual) violence, either direct or indirect, should be reported as soon as possible to your supervisor or any other member of management. This includes threats by members as well as threats by

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

anyone else. When reporting a threat of violence, you should be as specific and detailed as possible.

Be sure to report any suspicious person or activities as soon as possible to a supervisor. Do not place yourself in peril. If you see or hear a commotion or disturbance near your work area, do not try to intercede or see what is happening.

We will promptly and thoroughly investigate all reports of threats of (or actual) violence and of suspicious individuals or activities. The identity of the person who made the report will be protected to the extent practical.

Any person who violates these guidelines will be subject to disciplinary action, up to and including termination of membership. Violations include making a threat of violence or actually committing a violent act.

If you are having a dispute or differences with another member, we encourage you to discuss it with your supervisor or the Fire Chief before the situation escalates into potential violence. Neshannock Township Volunteer Fire Company is eager to assist in the resolution of member disputes and we will not discipline a member for raising these types of concerns.


## 526 Cell Phone Usage


Neshannock Township Volunteer Fire Company provides cellular telephones in some apparatus. The phones are provided to assist members in communicating with management and other business-related contacts and for use on emergency scenes. Cell phones are primarily intended for business-related calls. However, occasional, brief personal use is permitted within reasonable limits. You should be aware that we might review cell phone invoices.

If you use a cell phone for business, always remember to apply normal business etiquette by keeping your conversations private and non-disruptive to others.

Members are permitted to carry personal cell phones as long as their use does not interfere with the member's job responsibilities. The use of camera phones may be restricted in certain areas, or altogether, as determined by Fire Company management.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

### 605 Military Leave

Neshannock Township Volunteer Fire Company will grant a military leave of absence to members who are absent from work because they are serving in the U.S. uniformed services in accordance with the Uniformed Services Membership and Remembrance Rights Act (USERRA). You are required to give your supervisor advance notice of upcoming military service, unless military necessity prevents advance notice or it is otherwise impossible or unreasonable.

Continuation of life insurance benefits is available as required by USERRA based on the length of the leave and subject to the terms, conditions and limitations of the applicable plans for which you are otherwise eligible.

When you return from military leave (depending on the length of military service in accordance with USERRA), you will be placed either in the position you would have attained if you had remained continuously employed or in a comparable position. For the purpose of determining benefits that are based on length of service, you will be treated as if you had been continuously employed.

Members should also review specific terms of military leave identified in applicable labor agreements. If you have questions about military leave, contact the Administrative Office for more information.

### 606 Medical Leave

Neshannock Township Volunteer Fire Company will grant medical leave for the absence of a member who is absent from service due to a medical condition or illness for a period of time over one month. To be placed on medical leave the member must present to the Fire Chief a valid Doctors excuse with expected return date.

Any member on medical leave will retain his or her status with the company and all member benefits that the member had before leave. A member on medical leave of absence may return to active duty with a signed doctor's release.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

### 607 Pregnancy-Related Absences

Neshannock Township Volunteer Fire Company will not discriminate against any member who requests an excused absence for medical disabilities associated with pregnancy. We will evaluate such leave requests according to the medical leave policy provisions outlined in this handbook and all applicable federal and state laws.

Due to the nature of the fire service, the inherent risks and dangerous (IDLH) atmospheres any suppression firefighter or EMS trained individual must inform management of their pregnancy if they feel they are pregnant or have confirmed their pregnancy. This policy is to protect the health and welfare of the unborn child from hazardous atmospheres. Upon notification the member will be placed on light duty and will not be allowed on the fireground or any other location where the mother or unborn child may come in contact with smoke or other hazardous conditions.

# Neshannock Township Volunteer Fire Company Volunteer Fire Company
## Member Handbook

### 701 Member Conduct and Work Rules

To ensure orderly operations and provide the best possible work environment, we expect you to follow rules of conduct that will protect the interests and safety of all members and Neshannock Township Volunteer Fire Company.

Although it is not possible to list all the forms of behavior that are considered unacceptable at work, the following are some examples of conduct that may result in disciplinary action, up to and including termination of membership:

* Possession of firearms or other dangerous weapons on company property
* Any conduct that endangers the safety of others
* Gambling on company property
* Possession, distribution, sale, or use of alcohol or illegal drugs at work or while operating equipment
* Theft or inappropriate removal or possession of property
* Falsification of timekeeping records
* Working under the influence of alcohol or illegal drugs
* Fighting or threatening violence in the workplace
* Negligence or improper conduct leading to damage of employer-owned or customer-owned property
* Insubordination or other disrespectful conduct
* Violation of safety or health rules
* Smoking in prohibited areas
* Sexual or other unlawful or unwelcome harassment or sexual acts committed on the premises
* Possession of dangerous or unauthorized materials, such as explosives or firearms, in the workplace
* Unauthorized use of telephones, mail system, or other employer-owned equipment
* Violation of personnel policies
* Unsatisfactory performance or conduct

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

## 702 Drug and Alcohol Use

Neshannock Township Volunteer Fire Company wants to provide a drug-free, healthful, and safe workplace. To meet this goal, we expect you to report to work in a mental and physical condition that enables you to perform your job in a satisfactory manner.

While on Neshannock Township Volunteer Fire Company premises or while conducting business or training related activities off Neshannock Township Volunteer Fire Company premises, you may not use, possess, distribute, sell, or be under the influence of alcohol or illegal drugs. We permit the legal use of prescribed drugs on the job only if they do not impair your ability to perform the essential functions of your job effectively and safely without endangering others.

If you violate this policy, it may lead to disciplinary action, up to and including immediate termination of your membership. Additionally, we may require that you participate in a substance abuse rehabilitation or treatment program. If you violate this policy, there could also be legal consequences.

Under the Drug-Free Workplace Act, a member who performs work for a government contract or grant must notify Neshannock Township Volunteer Fire Company of a criminal conviction for drug-related activity occurring in the workplace. The report must be made within five days of the conviction.

If you have questions about this policy or issues related to drug or alcohol use at work, you can raise your concerns with your supervisor or the Board of Directors without fear of reprisal.

## 703 Sexual and Other Unlawful Harassment

Neshannock Township Volunteer Fire Company is committed to providing a work environment that is free from all forms of discrimination and conduct that can be considered harassing, coercive, or disruptive, including sexual harassment. Actions, words, jokes, or comments based on an individual's sex, race, color, national origin, age, religion, disability, or any other legally protected characteristic will not be tolerated.

Sexual harassment is defined as unwanted sexual advances, or visual, verbal, or physical conduct of a sexual nature. This definition includes many forms of offensive behavior and includes gender-based harassment of a person of the same sex as the harasser. The following is a partial list of sexual harassment examples:

* Unwanted sexual advances.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
# Member Handbook

* Offering membership benefits in exchange for sexual favors.

* Making or threatening reprisals after a negative response to sexual advances.

* Visual conduct that includes leering, making sexual gestures, or displaying of sexually suggestive objects or pictures, cartoons or posters.

* Verbal conduct that includes making or using derogatory comments, epithets, slurs, or jokes.

* Verbal sexual advances or propositions.

* Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, or suggestive or obscene letters, notes, or invitations.

* Physical conduct that includes touching, assaulting, or impeding or blocking movements.

Unwelcome sexual advances (either verbal or physical), requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of membership; (2) submission or rejection of the conduct is used as a basis for making membership decisions; or, (3) the conduct has the purpose or effect of interfering with work performance or creating an intimidating, hostile, or offensive work environment.

If you experience or witness sexual or other unlawful harassment in the workplace, report it immediately to your supervisor. If the supervisor is unavailable or you believe it would be inappropriate to contact that person, you should immediately contact the Fire Chief. You can raise concerns and make reports without fear of reprisal or retaliation.

All allegations of sexual harassment will be quickly and discreetly investigated. To the extent possible, your confidentiality and that of any witnesses and the alleged harasser will be protected against unnecessary disclosure. When the investigation is completed, you will be informed of the outcome of the investigation.

Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment must immediately advise the Fire Chief so it can be investigated in a timely and confidential manner. Any member engaging in sexual or other unlawful harassment will be subject to disciplinary action, up to and including termination of membership.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

### 705 Personal Appearance

We want Neshannock Township Volunteer Fire Company members to reflect an appropriate professional image to our public. How you dress, your grooming and personal cleanliness standards all contribute to that image and also to the morale of your co-workers.

When on the premises or whenever representing Neshannock Township Volunteer Fire Company, you are expected to present a clean, neat, and tasteful appearance. You should always dress and groom yourself according to the requirements of your position and accepted social standards.

Your supervisor is responsible for establishing a reasonable dress code appropriate to the job you perform. Be sure to consult your supervisor if you have questions as to what constitutes appropriate appearance.

Because personal style can be important to people, we do not want to restrict individual tastes unnecessarily. However, to give additional guidance, we expect Neshannock Township Volunteer Fire Company members to follow the personal appearance guidelines below:

* Shoes must provide safe, secure footing, and offer protection against hazards.
* Tank tops, tube or halter tops, or shorts may not be worn under any circumstances.
* Spandex or tight-fitting clothing is not appropriate for the work environment unless worn as under garments.
* Mustaches must be clean, well trimmed, and neat. Any member that has the potential to wear respiratory protection is prohibited from having a beard or facial hair that may prevent the wearer from obtaining a seal using a respirator per OSHA standards.
* Unnaturally colored hair and extreme hairstyles do not present an appropriate professional appearance.
* Offensive body odor and poor personal hygiene is not professionally acceptable.
* Perfume, cologne, and aftershave lotion should be used moderately or avoided altogether, as some individuals may be sensitive to strong fragrances.
* Jewelry should not be functionally restrictive, dangerous to job performance, or excessive.
* Facial jewelry, such as eyebrow rings, nose rings, lip rings, and tongue studs, is not professionally appropriate and must not be worn on the premises or when representing the company.
* Multiple ear piercings (more than one ring in each ear) are not professionally appropriate and must not be worn on the premises or when representing the Company.
* Torso body piercings with visible jewelry or jewelry that can be seen through or under clothing must not be worn on the premises or when representing the Company.

The use of good personal judgment, taking into account these general guidelines, will help to maintain the professionalism of our workforce. Your cooperation is appreciated.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

## 706 Return of Property

As part of your job, you may be given temporary possession of Neshannock Township Volunteer Fire Company property such as the following:

* equipment
* identification badges
* keys
* manuals
* pagers
* protective equipment
* tools
* uniforms
* vehicles
* communication equipment

You are expected to be responsible for and maintain control of any Neshannock Township Volunteer Fire Company in your possession. If your membership ends, all Neshannock Township Volunteer Fire Company property must be returned on or before your last day of work. In situations where you do not return Neshannock Township Volunteer Fire Company property, we may take steps to recover the item or its cost by withholding from your regular or final paycheck when allowed by law, or by taking legal action.

## 708 Resignation

Resignation is defined as a voluntary act initiated by an member to terminate membership with Neshannock Township Volunteer Fire Company. Although there is no requirement that you give advance notice, doing so can reduce the impact on your co-workers and productivity. We request a resigning member submit a written notice to the Board of Directors.

# Neshannock Township Volunteer Fire Company Volunteer Fire Company Member Handbook

## 710 Security Inspections

Neshannock Township Volunteer Fire Company is committed to maintaining a work environment that is free of illegal drugs, alcohol, firearms (except as authorized for Police Officers), explosives, or other improper materials. We prohibit the possession, transfer, sale, or use of such materials on our premises. To ensure this policy is successful, we need every member's cooperation.

We may provide you with desks, lockers, and other storage devices for your convenience but these are always the sole property of Neshannock Township Volunteer Fire Company. Because they are our property, we may inspect them along with any items that are inside them. Agents or persons we authorize, either with or without prior notice to you, may make an inspection at any time. All members are advised that no privacy rights are extended to any such areas (lockers, desks, etc.). The designated agents or persons who will be authorized for any such inspection will be noted to the members from time to time and as necessary. Presently, the authorized agent will be the Police Superintendent, accompanied by the Fire Chief.

## 714 Drug Testing

Neshannock Township Volunteer Fire Company is committed to providing a safe, efficient, and productive work environment for all members. Using or being under the influence of drugs on the job may pose serious safety and health risks. To help ensure a safe and healthful working environment, job applicants and members may be asked to provide body substance samples (such as urine and/or blood) to check for the illicit or illegal use of drugs.

If you have questions about our drug testing policy or its administration, consult with the Board of Directors.

## 716 Progressive Discipline

This policy describes the procedure for administering equitable and consistent discipline for unsatisfactory conduct at Neshannock Township Volunteer Fire Company. We believe that the best disciplinary measure is the one that does not have to be enforced and comes from good leadership and fair supervision at all membership levels.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

We also believe that it is in the best interests of Neshannock Township Volunteer Fire Company to ensure fair treatment of all members and make certain that disciplinary actions are prompt, uniform, and impartial. The major purpose of any disciplinary action is to correct the problem, prevent recurrence, and prepare the member for satisfactory performance in the future.

Disciplinary action may call for any of several steps -- verbal warning, written warning, suspension, or termination of membership -- depending on the severity of the problem and the number of occurrences. There may be circumstances when one or more steps are bypassed.

Progressive discipline means that, with respect to most disciplinary problems, these steps will normally be followed: a first offense may call for a verbal warning; a next offense may be followed by a written warning; another offense may lead to a suspension; and, still another offense may then lead to termination of membership.

Neshannock Township Volunteer Fire Company recognizes that there are certain types of member problems that are serious enough to justify either a suspension, or, in extreme situations, termination of membership, without going through the usual progressive discipline steps.

By using progressive discipline, we hope that most member problems can be corrected at an early stage, benefiting both members and Neshannock Township Volunteer Fire Company. Additional information regarding discipline can be found in the Company By-Laws.

## 718 Problem Resolution

Neshannock Township Volunteer Fire Company is committed to providing the best possible working conditions for our members. Part of this commitment is encouraging an open and frank atmosphere in which any problem, complaint, suggestion, or question receives a timely response from Neshannock Township Volunteer Fire Company management.

Neshannock Township Volunteer Fire Company strives to ensure fair and honest treatment of all members. We expect supervisors and members to treat each other with mutual respect. We encourage members to offer positive and constructive criticism to each other.

If you disagree with established rules of conduct, policies, or practices, you can express your concern to the Board of Directors. You will not be penalized, formally or informally, for voicing a complaint with Neshannock Township Volunteer Fire Company in a reasonable, business-like manner.

If a situation occurs when you believe that a condition of membership or a decision affecting you is unjust or inequitable, you are encouraged to bring the issue to the attention of your supervisor or the Board of Directors.

31

# Neshannock Township Volunteer Fire Company Volunteer Fire Company
# Member Handbook

Not every problem can be resolved to everyone's total satisfaction, but only through understanding and discussion of mutual problems can members and management develop confidence in each other. This confidence is important to the operation of an efficient and harmonious work environment.

## 722 Workplace Etiquette

Neshannock Township Volunteer Fire Company strives to maintain a positive work environment where members treat each other with respect and courtesy. Sometimes issues can arise when members may be unaware that their behavior at work may be disruptive or annoying to others. Very often you can address these day-to-day issues by politely talking with your co-worker to bring the perceived problem to his or her attention.

In most cases, common sense will dictate an appropriate resolution. Neshannock Township Volunteer Fire Company encourages all members to keep an open mind and graciously accept constructive feedback regarding their behavior that may be adversely affecting other members.

The following are some workplace etiquette guidelines and suggestions to help you be more conscientious and considerate of your co-workers and the work environment. These are not necessarily intended to be hard and fast work rules with disciplinary consequences. If you have comments, concerns, or suggestions about workplace etiquette, contact the Board of Directors.

* Return copy machine and printer settings to their default settings after changing them.
* Replace paper in the copy machine and printer paper trays when they are empty.
* Retrieve print jobs in a timely manner and be sure to collect all your pages.
* Keep the area around the copy machine and printers orderly and picked up.
* Be careful not to take or discard others' print jobs or faxes when collecting your own.
* Try to minimize unscheduled interruptions of other members while they are working.
* Conduct conversations in areas where the noise will not be distracting to others.
* Refrain from using inappropriate language (swearing) that others may overhear.
* Avoid discussions of your personal life/issues in public conversations that can be easily overheard.
* Monitor the volume when listening to music, voice mail, or a speakerphone that others can hear.
* Clean up after yourself and do not leave behind waste or discarded papers.
* Keep common work areas clean and pick up after yourself.
* Practice good risk management (i.e. clean up oil on the floor, put tools back when done, squeegee water off floor, etc.).

By being considerate of how our behavior affects other members of our work team, we show respect for others.

# Neshannock Township Volunteer Fire Company
# Volunteer Fire Company
## Member Handbook

## 800 Life-Threatening Illnesses in the Workplace

Members with life-threatening illnesses, such as cancer, heart disease, and AIDS, often wish to continue their normal pursuits, including work, to the extent allowed by their condition. Neshannock Township Volunteer Fire Company supports these endeavors as long as members are able to meet acceptable performance standards.

As in the case of other disabilities, we will make reasonable accommodations in accordance with all legal requirements, to allow qualified members with life-threatening illnesses to perform the essential functions of their jobs.

Medical information on individual members is treated confidentially. Neshannock Township Volunteer Fire Company will take reasonable precautions to protect such information from inappropriate disclosure. Managers and other members have a responsibility to respect and maintain the confidentiality of member medical information. Anyone inappropriately disclosing such information is subject to disciplinary action, up to and including termination of membership.

## 802 Recycling

Neshannock Township Volunteer Fire Company supports environmental awareness by encouraging recycling and waste management in our business practices and operating procedures. This support includes a commitment to the purchase, use, and disposal of products and materials in a manner that will best utilize natural resources and minimize negative impacts on the earth's environment.

We may promote the separation and collection of the following recyclable materials:

* paper
* cans
* plastics
* motor oil
* tires
* printer cartridges

Members are invited to bring to management's attention ways to improve our recycling efforts. When we recycle, we are helping to solve the trash disposal and control problems facing all of us. If you have questions or ideas and suggestions for the recycling program, contact the Board of Directors.



**ORIGINAL**

## NESHANNOCK TOWNSHIP VOLUNTEER FIRE COMPANY
### Constitution and By-Laws

**Approved April 2004**

**Revisions:**

June 2005
October 2007
January 2009
September 2010
August 2011
July 2012
January 2014





## Table of Contents

Article Number                                                              Page

I       Organization Name                                                   3
II      Mission Statement                                                   3
III     Operations                                                          4
IV      Membership                                                          5
V       Physical Requirements                                              10
VI      Disability Accommodation                                           11
VII     Drug and Alcohol Testing                                           12
VIII    Sexual and other Unlawful Harassment                               15
IX      Social Media Policy                                                17
X       Dues                                                               22
XI      Business Officers                                                  23
XII     Duties of Business Officers                                        25
XIII    Fire Organization                                                  28
XIV     Problem Resolution                                                 29
XV      Miscellaneous Provisions                                           29
XVI     Rules and Regulations                                             29
XVII    Discipline                                                         30
XVIII   Dissolution                                                        32

Appendix      Township Of Neshannock
              Lawrence County, Pennsylvania
              Resolution #2004-14
              Smoking and Tobacco Policy

# NESHANNOCK TOWNSHIP
# VOLUNTEER FIRE COMPANY
## Constitution and By-Laws

## ARTICLE I
## Organization Name

The name of this organization shall be the "Neshannock Township Volunteer Fire Company".

## ARTICLE II
## Mission Statement

The Neshannock Township Volunteer Fire Company's mission is to be a leading emergency service organization by:

- Meeting the needs of our community in fire prevention, fire suppression and rescue
- Utilizing and improving the dedication and skills of our people
- Constantly improving all of our services and operations

In carrying out this mission, the Neshannock Township Volunteer Fire Company will:

- Give top priority to firefighter safety and environmental concerns
- Encourage the professional and personal development of our members
- Work as teams to take full advantage of our skills, knowledge and creativity
- Communicate openly and honestly to our members and community to inspire trust confidence

3

## ARTICLE III
## Operations

### Section 1

The regular meeting of the Company shall be held the third Tuesday of each month at 8:00 P.M. The board of directors will meet at 7:30 P.M. prior to the monthly meeting.

### Section 2

Special meetings may be called by the President on the request of five (5) members and after 24 hours' notice. Minutes must be recorded for all meetings and a typed copy of the minutes must be placed in the record book at the fire station within five (5) days.

### Section 3

Ten (10) or more members of the Company shall constitute a quorum for the purpose of conducting company business.

### Section 4

The following shall be the order of business at any regular meeting:

1. Roll call
2. Reading of minutes of the preceding meeting
3. Reading of communication
4. Reports of officers
5. Report of committees
6. Appointing of committees
7. Unfinished business
8. New business
9. Miscellaneous business
10. Presentation of bills and acting on same
11. Anything for the good of the company
12. Adjournment

### Section 5

Amendments to this constitution must be submitted in writing at a regular meeting of the company and laid on the table one month before any action may be taken. Amendments must be passed by 2/3 majority of members casting ballots or voting by universal sign.

### Section 6

Roberts Rules of Order shall govern all cases of parliamentary procedures not herein provided for.

### Section 7

The use of the masculine pronoun in this document will include the female pronoun.

4

# ARTICLE IV
## Membership

<u>Section 1</u>   The membership of the company shall be one of the following:

**Active Member Class (divided into training options)**

*Firefighter/Emergency Medical Technician*

Full suppression member with EMT-B or EMT-P certification. Subject to all training requirements for suppression as well as continuing education for medical.  Position can also encompass other classifications such as Engineers or Water Rescue, etc. based on drivers or training requirements. Issued full PPE, pager, etc.

Prerequisites: Must be between ages of 18 and 55 at time of application.

*Firefighter*

Full suppression member with EMS First Responder training.  Subject to all training requirements for suppression.

Prerequisites: Must be between ages of 18 and 55 at time of application.

*Engineer*

Engineer only member, issued basic suppression PPE. Subject to drivers requirements. CDL is a possibility as well, at the discretion of the fire chief.

Prerequisites: Must be at between the ages of 18 and 65 at time of application.

*Emergency Medical Technician*

EMS member only.  Issued medical grade PPE.  Subject to all continuing education requirements for medical, meeting attendance requirements, mandatory
"all staff" training (i.e. streets, vehicle rescue, etc.)

Prerequisites:    Must be at least age 18 of time of application. Must have current Pennsylvania Department of Health EMT-B or higher certification.

*Fire Police*

Fire Police assist with traffic and crowd control and may also assist with scene security. Fire Police are non-firefighting or EMS members and are issued traffic control equipment and protective clothing conducive for traffic control and identification.

5

Prerequisites: Must be between ages 18 and 65 at time of application.


*Cadets*

Cadets must meet all eligibility standards as outlined in the Pennsylvania State Department of Child Labor rules, as well as any other applicable rules governing junior firefighting cadets including the Cadet applicants shall be interviewed by the recruitment and retention committee and follow the application requirements as set forth in these Bylaws.  Cadets with two (2) years of service in the Department may join the Fire Company at age eighteen (18) by making formal application.  A Cadets application will have priority over all others if there is a waiting list. Cadets with two (2) years of service may have the probation period waived.  Junior membership will also be credited towards active membership.

Prerequisites:  Cadets must be sixteen (16) years of age.



*Special Duty Volunteer (SDV's) (Non Resident Volunteers)*

Special duty volunteers are defines as those active members living outside of Neshannock Township boundaries and any other member who have been specifically approved for that status by the Fire Chief. SDV's can maintain any training option (firefighter, EMS, Rescue Technician, etc.). SDV's must meet all qualifications, application process, procedures, training and other requirements of probationary and active members except for response call procedures and requirements.  They may not respond to calls from their residence unless an all-call is issued. SDV's are entitled to all privileges of active membership (i.e. voting, etc.). SDV's must perform a minimum of 16 hours per month of scheduled station duty in addition to weekly training. The minimum shift would be four (4) hours of continuous duty.  The SVD will respond to calls on the apparatus as signed by the Duty Officer, commensurate with their level of training and certification.  They will perform such duties as is reasonably assigned by the Duty Officer.




*Fire Line Officers*

Fire Line Officers will consist of Fire Chief, Deputy Fire Chief, Captain/Safety Officer, Training Officer and Shift Commander and any other officer that the Fire Chief may appoint. The Officers command and manage all Active Members.


**Business Class**

Business Class members do not participate in any firefighting activities and are not issued protective equipment or radio equipment. Business Class members may hold the following offices: President, President Elect, Vice President, Secretary, Treasurer, Assistant Secretary Treasurer and Board of Directors. Only three (3) Business Class Members may hold the offices listed above at one time. Business Class members may participate in regular company meetings and retain voting rights. Business Class members must attend a minimum of eight (8) meetings to maintain
Business Class status. If attendance requirements are not met in a calendar year, the Business

Class member is automatically placed on social status. A Business Class member will be entitled to life insurance benefits as long as the Business Class status is maintained. This is subject to stipulations set forth by the insurance policy. A member must have 10 years' service in the Company as an Active Member prior to becoming a Business Class member.

## Social Class

Social members are those who contribute to the success of the Company in aspects other than fire suppression or emergency response. They need not be residents of Neshannock Township. Social Members do not retain voting privileges, are not eligible for benefits and are not issued individual building access. These members may be appointed by the President to serve on such committees as the President sees fit. Social members are not exempt from company dues. Social members cannot hold any office within the company.

## Honorary Class

Honorary members are those men, women, or children whom by some act or deed have rendered valuable service to the company or community. Membership will be voted upon by a motion from the floor, setting forth the reasons why this honor would be conferred. An honorary member need not be a resident of Neshannock Township. He or she does not participate actively in the business affairs or duties of the company and does not retain voting privileges.

## Section 2

Life Membership shall be given to all active members under Article IV who have been an Active Member for 20 or more consecutive years and have obtained the age of 62. Life members shall retain all insurance and benefits as active members for life and will be exempted from department dues.

## Section 3

a. Applications will be considered regardless of race, sex, religion, creed, color, age, or national origin.
b. The recruitment and retention committee under the supervision of the Board of Directors shall formulate policies on applicant recruitment, orientation, and retention.
c. An application fee may be determined by the Recruitment and Retention Committee to cover the costs of application processing (background check, physical, drug test etc.)
d. Applications for membership will be issued and accepted between January 1st and October 31st annually.
c. All applicants are required to attend a pre-application interview before the Recruitment and Retention Committee. Formal application can then be made to the department after all requirements listed in the application packet have been satisfied. After making formal application the applicant will then be interviewed before the Board of Directors before any vote is taken on the application. Any vacancy shall be filled from the waiting list of applicants as approved by the Board of Directors.

7

d.  Applications will be read in the November meeting, tabled for one month and voted on In the December meeting.

e.  Any applicant with previous experience and documented Pennsylvania State Fire Academy Approved Training or Certifications meeting the minimum requirements of the department may be voted on after the pre application interview before the December meeting at the discretion of the Recruitment and Retention Committee. The vote is subject to any application requirements (I.e. Background check, physical exam, physical agility test, and drug and alcohol test).

f.  Voting shall be by secret ballot and eleven (11) no votes shall reject.

g.  Each newly accepted member shall be assigned a Mentor during his probationary period.

h.  Each newly accepted member will be on probation for one (1) year At 90 and 180 days after obtaining membership the probationary member will meet with the Fire Chief, Mentor and Company President for a probationary evaluation report. The report will note the member's strengths, work performance, team work and any deficiencies or job behavior characteristics that need corrected. At the end of probation the member will again meet with the above committee for a final evaluation. After the final evaluation the committee will determine either of the following:  end of probation, extension of probation, or removal from active status.

i.  Active Members in the Firefighter/EMT or Firefighter training option must successfully complete the PA State Fire Academy essentials course, Firefighter I and obtain CPR/AED within the probationary period.

j.  Emergency Medical Technician have to maintain the approved Pennsylvania Department of Health EMT-B or higher certifications.

k.  Fire Police are required to obtain Basic Fire Police or similar course as approved by the Fire Police Captain, and CPR/AED.

l.  Cadets are required to obtain the required Essentials Modules as determined by the fire officers and CPR/AED. Should these courses not be available additional courses may be substituted as the Line Officers see fit.
m.  Active Members in the Engineer training option must complete an approved Emergency Vehicle Drivers Training Program, An approved Pump Operations class and minimum PA State Fire Academy Essentials of firefighting module as required by the Fire Chief.

m.   Special Duty Volunteers (nonresident) must have minimum PA Essentials of firefighting class or equivalent as approved by the fire chief prior to application. Firefighter I and Emergency Medical Responder within two years of obtaining membership.

n.  If the member does not successfully complete the requirements during the required period, he shall be dropped from the active company roll and given the option for social status.

o.  Active members shall be removed from Active Status and removed from roster to participate in at least seventy
(70) hours of scheduled training for any calendar year. Fire Police shall participate in at least eighteen (18) hours of department approved training for any calendar year. All members must attend a minimum of eight (8) regular company meetings in a calendar year. The Board of Directors, who shall do a bi-annual review in June of any calendar year, shall enforce this action.  Any members (excluding those in their probationary period) who, in June of the year, are currently not meeting the requirements listed above, shall be sent a written warning outlining the company policy and shall be given the opportunity to meet with the Board of Directors and review their statistics.  In January of the next calendar year, the Board of Directors shall once again review member participation statistics, and take necessary measures against members who have not met the participation requirements.  All the

8

benefits of protective clothing and radio equipment, as well as any other privileges of any active member, shall be terminated.  No company vote is necessary. A Suppression member that has a legitimate excuse for not meeting one or both of the criteria set forth above shall appear before the Board of Directors for review of his suppression status.

p.   A probationary member may be terminated at any time during probation with just cause.

q.   Any member who no longer lives in the township may remain active by becoming a Special Duty Volunteer.

r.   Any perspective membership applications that do not meet with the pre-established criteria or standards and policies for accepting members within the NTVFC, as active members within the organization are encouraged to request their application be accepted as a social member.  This shall not hinder any physically challenged applicant from becoming a social member and participating.

9

# ARTICLE V
## Personnel Policy-Physical Requirements

a.  Physical Agility Testing

The NTVFC Board of Directors may, at their discretion, request any or all perspective members to pass a physical agility endurance test as outlined under the "Firefighters Professional Fitness Requirements", as adopted or amended by the National Fire Protection Association Qualifications for Professional Firefighters Standard 1001.  Likewise, the Board of Directors may use any similar physical agility test.

b.  Physical Examination

The NTVFC will require all newly accepted Suppression and Fire Police members to take a typical pre-employment physical exam by a specified company physician or clinic.  The physical shall be completed within thirty (30) days after the member's acceptance into the organization.  If any member fails to notify the NTVFC of a difficulty in keeping an appointment or the members fails to appear for the appointment, that member shall be responsible for any fees incurred for the scheduled appointment. All Suppression and Fire Police Members are required to take at minimum biannual (two years) physical by the company physician and must be cleared by the physician to maintain active status.  Should a member be deemed unfit for active duty the member must follow up with his or her family physician and be cleared by the company physician after treatment to return to active duty. The Board of Directors may at any time require any member to receive a physical exam or drug and alcohol test with just cause.

## ARTICLE VI
## Disability Accommodation

Neshannock Township Volunteer Fire Company is committed to complying fully with the Americans with Disabilities Act (ADA) and ensuring equal opportunity in employment for qualified persons with disabilities.

All employment practices and activities are conducted on a non-discriminatory basis. Our hiring procedures have been reviewed and provide persons with disabilities meaningful employment opportunities. Pre-employment inquiries are made only regarding an applicant's ability to perform the duties of the position.

We require post-offer medical examinations only for positions that have bona fide job-related physical requirements. An examination will be given any person who enters the position but only after being given a conditional job offer. Medical records are kept separate and confidential.

Reasonable accommodation is available to an employee with a disability if the disability affects the performance of job functions. We make all employment decisions based on the merits of the situation in accordance with defined criteria, not the disability of the individual.

Neshannock Township Volunteer Fire Company is also committed to not discriminating against any qualified employee or applicant because the person is related to or associated with a person with a disability. Neshannock Township Volunteer Fire Company will follow any state or local law that provides individuals with disabilities greater protection than the ADA.

This policy is neither exhaustive nor exclusive. Neshannock Township Volunteer Fire committed to taking all other actions necessary to ensure equal employment opportunity for persons with disabilities in accordance with the ADA and all other applicable federal, state, and local laws.

11

## Article VII
## Drug and Alcohol Testing

### Section 1

The public and the members have the absolute right to expect persons employed by Neshannock Township Volunteer Fire Company to be free from the effects of drugs and alcohol and that the Neshannock Township Volunteer Fire Company members shall report fit and able for duty. The purpose of this article shall be to guarantee these principals while not violating the constitutional rights of members. The Neshannock Township Volunteer Fire Company may randomly drug test any member.

### Section 2

Members shall be prohibited from:

    a. Consumption of alcohol at any time during or just prior to the beginning of an incident , training, department activity or anywhere on any Neshannock Township Volunteer Fire Company premises or job sites, including any departmental buildings, properties, scenes, trainings, vehicle, and members personal vehicles while engaged in Company Business.

    b. Consumption of alcohol at any time during or just prior to a departmental activity or anywhere on any Fire Company premises or job sites, including Neshannock Township Volunteer Fire Company Buildings, properties, scenes, or vehicles.

    c. Possessing, using, selling purchasing, or delivery any illegal drug.

    d. Failing to report to a member's supervisor's any known adverse side effects of medications or prescription drugs, which the member may be taking.

### Section 3

When the Company has reasonable suspicion that a member's performance is being affected by the use of alcohol, abuse of prescription drugs, or the use illegal drugs, the Company shall have the right and responsibility to require the member to submit to alcohol and drug testing as set forth in this Agreement.  In the event of an accident involving bodily or property damage the requirement of a drug or alcohol test will be at the Chief's Discretion.

### Section 4

Within seventy-two (72) hours of time the member is ordered to testing authorized by this Agreement, the Company shall provide the member with a written notice setting forth the facts and interferences which form the basis of the order to test.  Refusal to submit to such test may subject members to discipline, but the member's taking of the test shall not be construed as a waiver of any objection or right that he/she possesses.

### Section 5

Any member, who is tested, except for random testing, shall be placed on medical leave from the time of the test of to the deliverance of the results.  Results will be simultaneously sent to the member and the Company. Arrangements will be made at the time of testing.

12

## Section 6

If required, the Company will provide transportation to the licensed medical facility to obtain bodily fluid or material samples.

In conduction the testing authorized by this Agreement, the Company shall:

a. Use only a clinical laboratory or hospital facility, which is certified to perform drug and/or alcohol testing. The licensed medical facility will serve as the collection site and qualified laboratories will conduct the required testing of samples.

b. Establish a chain of custody procedure for both the sample collection and testing that will ensure the integrity of the identity of each sample and test result.

c. Collect a sufficient sample of the same bodily fluid or material from a member to allow for initial screening, confirmatory test, and a sufficient amount to be set aside reserved for later testing if requested by a member.

d. Collect samples in such a manner as to preserve the individual member's right to privacy while insuring a high degree of security for the sample and its freedom from adulteration. Members shall not be witnessed by anyone while submitting a sample except in circumstances where laboratory or facility does not have a "clean room" for submitting samples or where there is reasonable suspicion that the member may attempt to compromise the accuracy of the testing procedure.

e. Confirm any sample that tests positive in initial screening for drugs by testing the second portion of the same sample by gas chromatography/mass spectrometry (GC/MS) or an equivalent or better scientifically accurate and acceptable method that provided quantitative data about the detected drug or drug metabolites. The members who test positive in violation of the standards contained in this agreement or federal code of regulations will be subject to discipline.

f. Provide the member tested with an opportunity to have the additional sample tested by a clinical laboratory or hospital facility of the member's choosing, at the member's own expense; provided the member notifies the Company within seventy-two (72) hours of receiving the results of the test.

g. Requires that the laboratory or hospital facility report to the Company that a blood or urine sample is positive only if both initial screening and confirmations tests are positive for a particular drug. The parties agree that should any information concerning such testing or the results thereof be obtained by the Company inconsistent with the understanding expressed herein (i.e., billing for testing that reveals the nature or number of test administered), the Company will not use such information in any manner or form adverse to the member's interest.

h. Require that with regarding to alcohol testing, of the purpose of determining whether the member is under the influence of alcohol, test results showing an alcohol concentration of .050 or more based upon the gram of alcohol per 100 milliters of blood shall be considered positive (Note: the foregoing standard shall not preclude the Company from attempting to show results between .01 and .05 demonstrate that the member was under the influence, but the Company shall bear burden of proof in such cases).

i. Provide each member tested with a copy of all information and reports received by the Company in connection with the testing and the results.

13

## Section 7

The department shall take no adverse employment action against any member who voluntarily seeks treatment, counseling, or other support for an alcohol or drug related problem, other than the Company will require that the member to accept a non-disciplinary medical leave. The foregoing in condition upon:

    a.  The member agreeing to appropriate treatment as determined by the physicians(s) involved;

    b.  The member discontinues his/her use of illegal drugs or abuse of alcohol;

    c.  The member completes the course of treatment prescribed, including an "after-care" group for a period of twelve (12) months;

    d.  The member agrees to submit to random testing during once returned to active status.

It is the member's responsibility to notify the chief of the company (or officer in charge) when he/she is consuming any prescription or non-prescriptions medication which may impair his/her judgment or performance or otherwise adversely affect the normal functions of the mental faculties or physical abilities or in an un-safe work environment.

Members convicted or under investigation for illegal use of drugs or alcohol, including possession, use, abuse, or driving while under the influence, must report that information to the Chief within seven (7) days of the incident for consideration. If not reported within that time, them member will subject to immediate dismissal.

Members who do not agree to or act in accordance with the foregoing shall be subject to discipline, up to and including discharge. This Article shall not be construed as an obligation on the part of the Company to retain a member on active status throughout the period of rehabilitation if it is appropriately determined that the member current use of alcohol or drugs prevents such individual from performing the duties of his position or whose continuance on active status would constitute a direct threat to the property and safety of others.

# ARTICLE VIII
## Sexual and other Unlawful Harassment

Neshannock Township Volunteer Fire Company is committed to providing a work environment that is free from all forms of discrimination and conduct that can be considered harassing, coercive, or disruptive, including sexual harassment. Actions, words, jokes, or comments based on an individual's sex, race, color, national origin, age, religion, disability, or any other legally protected characteristic will not be tolerated.

Sexual harassment is defined as unwanted sexual advances, or visual, verbal, or physical conduct of a sexual nature. This definition includes many forms of offensive behavior and includes gender-based harassment of a person of the same sex as the harasser. The following is a partial list of sexual harassment examples:

* Unwanted sexual advances.

* Offering employment benefits in exchange for sexual favors.

* Making or threatening reprisals after a negative response to sexual advances.

* Visual conduct that includes leering, making sexual gestures, or displaying of sexually suggestive objects or pictures, cartoons or posters.

* Verbal conduct that includes making or using derogatory comments, epithets, slurs, or jokes.

* Verbal sexual advances or propositions.

* Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, or suggestive or obscene letters, notes, or invitations.

* Physical conduct that includes touching, assaulting, or impeding or blocking movements.

Unwelcome sexual advances (either verbal or physical), requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of employment; (2) submission or rejection of the conduct is used as a basis for making employment decisions; or, (3) the conduct has the purpose or effect of interfering with work performance or creating an intimidating, hostile, or offensive work environment.

If you experience or witness sexual or other unlawful harassment in the workplace, report it immediately to your supervisor. If the supervisor is unavailable or you believe it would be inappropriate to contact that person, you should immediately contact the Fire Chief. You can raise concerns and make reports without fear of reprisal or retaliation.

All allegations of sexual harassment will be quickly and discreetly investigated. To the extent possible, your confidentiality and that of any witnesses and the alleged harasser will be protected

against unnecessary disclosure. When the investigation is completed, you will be informed of the outcome of the investigation.

Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment must immediately advise the Fire Chief so it can be investigated in a timely and confidential manner. Any employee engaging in sexual or other unlawful harassment will be subject to disciplinary action, up to and including termination of employment.

# ARTICLE IX
# Social Media Policy

## I) PURPOSE

The Neshannock Township Volunteer Fire Company endorses the secure use of social media to enhance communication and information exchange; streamline processes; and foster productivity with its members. This policy establishes NTVFC's position on the use and management of social media and provides guidelines on the management, administration, and oversight. This policy is not meant to address one particular form of social media; rather social media in general in general terms as technology will outpace our ability to discover emerging technology and create policies governing its use.

## II) PHILOSOPHY

Social media provides a valuable means of assisting the NTVFC and its personnel in meeting community education, community information, fire prevention, and other related organizational and community objectives. This policy identifies possible uses that may be evaluated and utilized as deemed necessary by fire administrative and supervisory personnel. This department also recognizes the role that social media tools may play in the personal lives of department personnel. The personal use of social media can have an effect on fire departmental personnel in their official capacity as firefighters. This policy is a means to provide guidance of a precautionary nature as well as restrictions and prohibitions on the use of social media by department personnel.

## III) DEFINITIONS
1) *Blog:* A self-published diary or commentary on a particular topic that may allow visitors to post responses, reactions, or comments.
2) *Post:* Content an individual shares on a social media site or the act of publishing content on a site.
3) *Profile:* Information that a user provides about himself or herself on a social networking site.
4) *Social Media:* A category of Internet-based resources that enable the user to generate content and encourage other user participation. This includes, but is not limited to, social networking sites: Facebook, Myspace, Twitter, YouTube, Wikipedia, blogs, and other sites. (There are thousands of these types of sites and this is only a short list.)
5) *Social Networks:* Platforms where users can create profiles, share information, and socialize with others using a range of technologies.
6) *Speech:* Expression or communication of thoughts or opinions in spoken words, in writing, by expressive conduct, symbolism, photographs, videotape, or related forms of communication.

## IV) POLICY
1. This policy shall apply to all NTVFC members regardless of membership status.
   a.   All department social media sites or pages shall be approved by the Fire Chief or designee and shall be administered by the departmental information services section or designee.
   b.   Social media pages shall clearly indicate they are maintained by the fire department and shall have the department logo and contact information prominently displayed.
   c.   Social media content shall adhere to applicable laws, regulations, and policies, including all information technology and records management policies of the department.

17

d.   Social media content is subject to open public records laws.

e.   Relevant records retention schedules apply to social media content.

f.   Content must be managed, stored, and retrieved to comply with open records laws and e-discovery laws and policies.

g.   Social media pages should state that the opinions expressed by visitors to the page(s) do not reflect the opinions of the department.

h.   Social media pages shall clearly indicate that posted comments will be monitored and that the department reserves the right to remove obscenities, off-topic comments, and personal attacks.

i.   Social media pages shall clearly indicate that any content posted or submitted for posting is subject to public disclosure.

## 2. Department-Sanctioned Use

Department personnel representing the department via social media outlets shall do the following:

a.   The use of department computers by department personnel to access social media is prohibited without authorization.

b.   Conduct themselves at all times as representatives of the department and, accordingly, shall adhere to all department standards of conduct and observe conventionally accepted protocols and proper decorum.

c.   Identify themselves as a member of the department.

d.   Do not post, transmit, or otherwise disseminate confidential information, including photographs or videos, related to department training, activities, or work-related assignments without express written permission.

e.   Do not conduct political activities or private business.

f.   Department personnel use of personally owned devices to manage the department's social media activities or in the course of official duties is prohibited without express written permission.

g.   Members shall observe and abide by all copyright, trademark, and service mark restrictions in posting materials to electronic media.

## 3. Potential Uses

a.   Social media is a valuable tool when providing information about
   i.   Special events
   ii.   Weather emergencies
   iii.   Major ongoing events in the jurisdiction that affects the entire community.
   iv.   Public safety information and public service announcements

b.   Membership Opportunities - Persons seeking volunteer positions use the Internet to search for opportunities.

c.   Background Checks - For authorized members to conduct a background check on potential members or volunteers
   i.   Candidates applying for membership with this department must sign a release document enabling an assigned member to conduct a background check using any resource to include social media.
   ii.   This department has an obligation to include Internet-based content when conducting background investigations of applicants.   iii. Searches should be conducted by recruitment and retention committee

18

with permission from the Fire Chief and only for the purposes or providing possible background material on member applicants.

    d.    Information pertaining to protected class status shall be filtered out prior to sharing any information found online with decision makers.

        i.    Persons authorized to search Internet-based content should be deemed as holding a sensitive position.

        ii.    Search methods shall not involve techniques that are a violation of existing law.

        iii.    Vetting techniques using social media as one of many resources to provide valid and up to date information shall be applied uniformly to all candidates.

        iv.    Every effort must be made to validate Internet-based information considered during the membership interview process.

    e.    This shall not be the only mechanism to provide background information on a possible candidate.

## 4. Personal Use - Precautions and Prohibitions

Department personnel shall abide by the following when using social media.

    a.    Department personnel are free to express themselves as private citizens on social media sites to the degree that their speech does not impair or impede the performance of duties, impair discipline and harmony among coworkers, or negatively affect the public perception of the department.

    b.    As public members, department personnel are cautioned that their speech either on or off duty, and in the course of their official duties that has a nexus to the member's professional duties and responsibilities may not necessarily be protected speech under the First Amendment.

        i.    This may form the basis for discipline if deemed detrimental to the department.

        ii.    Department personnel should assume that their speech and related activity on social media sites will reflect upon their position within the department and of this department.

    c.    Department personnel shall not post, transmit, or otherwise disseminate any information to which they have access as a result of their membership without written permission from the Fire Chief or designee.

    d.    Department personnel are cautioned not to do the following:

        i.    Display department logos, uniforms, or similar identifying items on personal web pages without prior written permission.

        ii.    Post personal photographs or provide similar means of personal recognition that may cause you to be identified as a firefighter, fire officer or member of this department without prior written permission.

        iii.    When using social media, department personnel should be mindful that their speech becomes part of the World Wide Web.

e.    Adherence to the department's code of conduct is required in the personal use of social media. In particular, department personnel are prohibited from the following:

    i.    Speech containing obscene or sexually explicit language, images, or acts and statements or other forms of speech that ridicule, malign, disparage, or otherwise express bias against any race, any religion, or any protected class of individuals.

    ii.    Department personnel may not divulge information gained by reason of their authority; make any statements, speeches, appearances, and endorsements; or publish materials that could reasonably be considered to represent the views or positions of this department without express authorization.

    iii.    Department personnel should be aware that they may be subject to civil litigation for publishing or posting false information that harms the reputation of another person, group, or organization otherwise known as defamation to include:

    iv.    publishing or posting private facts and personal information about someone without their permission that has not been previously revealed to the public, is not of legitimate public concern, and would be offensive to a reasonable person;

    v.    using someone else's name, likeness, or other personal attributes without that person's permission for an exploitative purpose; or

    vi.    publishing the creative work of another, trademarks, or certain confidential business information without the permission of the owner.

f.    Department personnel should be aware that privacy settings and social media sites are constantly in flux, and they should never assume that personal information posted on such sites is protected.

g.    Department personnel should expect that any information created, transmitted, downloaded, exchanged, or discussed in a public online forum may be accessed by the department at any time without prior notice.

## V) VIOLATIONS

1. Reporting violations.
    a. Any member becoming aware of or having knowledge of a posting or of any website or webpage in violation of the provision of this policy shall notify his or her supervisor immediately for follow-up action.

20

2. Violation of this social media policy may result in suspension or termination.

## VI) DISCIPLINARY ACTION

The disciplinary action presented herein may be used in conjunction with or superseded by the disciplinary action listed elsewhere in the Neshannock Township Volunteer Fire Company Bylaws.

1.   Violations of the Social Media and Social Networking Policy are to be dealt with in the violation manner listed below:
   a.   Tampering with Departmental Issued Devices. Members found using, or tampering with video and audio recording devices will face the following:
   b.   Immediate supervisory counseling session.
   c.   30 day suspension

2.   Unauthorized Use of Video and Audio Recording Devices. Members found using unauthorized video and audio recording devices will face the following:

   a.   Immediate supervisory counseling session.
   b.   Fire Chief counseling session.
   c.   Confiscation of unauthorized recording devices and content.
   d.   30 day suspension.
   e.   Three (3) month probation.

3.   Unauthorized Posting of Department Scene(s) and/or Department Multi-Media Content. Members found posting and sharing unauthorized content will face the following:
   a.   Immediate supervisory counseling session.
   b.   Fire Chief counseling session.
   c.   30 day suspension.
   d.   Three (3) month probation.
   e.   Suspension from use of Departmental Devices for six (6) months.

4.   Inappropriate and/or illegal posting and/or sharing of offensive/objectionable material on social media/networking sites. Members found posting and/or sharing inappropriate and/or illegal content will face the following:
   a.   Immediate supervisory counseling session.
   b.   Fire Chief counseling session.
   c.   90 day suspension.
   d.   One (1) year probation.
   e.   Suspension from use of departmental devices during term of membership.
   f.   Termination of membership.

5.   Repeat and/or Consecutive Violations.
   a.   Repeated or consecutive violations of one or more of the above regardless of order will result in member's immediate termination and possible legal/criminal proceedings. This outlined disciplinary process is Subject to approval from the Fire Chief, Board of Directors and NTVFC's legal counsel.

21

# ARTICLE X
## Dues

a.  The dues, initiation fees and application fees of the Company shall be set as the membership from time to time so designate.

b.  For a member to exercise voting privileges, dues must be paid prior to December regular company meeting.

c.  Members shall be dropped from the roster for failure to pay dues prior to December meeting of the calendar year.  He or she will be notified in writing of said suspension.  Re-admittance to the roster, after December 31st, will be allowed once dues are paid and upon favorable review or action by the Board of Directors.

d.  Life members are exempt from paying dues.

# ARTICLE XI
## Business Officers

### Section 1

a. The officers of the company shall be President, President Elect, Vice-President, Secretary, Treasurer, Assistant Secretary-Treasurer, and three directors.

b. Officers shall be elected for a two (2) year term or until their successor takes office. Voting shall be by secret ballot and the winner shall be declared by a 51% vote of the majority casting ballots. The President-Elect and Vice President shall be confirmed for their respective offices of President and President-Elect by a 51% majority of the votes cast. The Vice President vacancy shall be filled by the candidate as nominated by the nominating committee and shall be confirmed for his respective office by a 51% majority of the votes cast. Nominations for the said offices will be accepted only after a negative vote or declining of the said officer for the respective position. If no decision is reached on the first ballot, a runoff between the candidates with the two highest numbers of votes will be held.

c. The directors shall be elected each for a three (3) year term, with one Director being elected each year.

d. The immediate ex-president shall be a member of the Board of Directors for one year with full privileges and obligations.

e. Five (5) of the regular members of the Board of Directors shall constitute a quorum for conducting business.

### Section 2

Nominations for officers and directors shall be submitted by the nominating committee at the regular November meeting each calendar year. Election shall be held at the December meeting at which time nominations may be made from the floor.

### Section 3

The Secretary shall post notices of the nominations at the regular meeting place, and take the necessary precautions to see that only those members qualified by attendance and in good standing carry out voting privileges. If a member has a legitimate excuse for missing four (4) or more regular meetings, he shall appear before the Board for review of his voting rights prior to the November meeting.

### Section 4

Officers shall assume their respective offices on the first day of January, and shall take and be held accountable to the following oath of office.

"I do solemnly swear that I will faithfully execute the office to which I have been elected and will to the best of my ability support and advance the purpose of the NTVFC and Relief Association"

The ranking member of the Board of Directors for the New Year shall administer the oath.

### Section 5

In case of the resignation or removal of an office, the Board shall fill the vacancy for the remainder of the term left vacant.

23

### Section 6

The President and Chief may only hold one office; all other active members may hold a business office and fire line office at the same time.

### Section 7

The President and Treasurer must have five (5) years' service in the Company as an active member. The President Elect, Vice-President, Secretary, Assistant Secretary-Treasurer, and Directors must have five (5) years' service in the company as an active member. Business officers must have 5 years' service as an active member.

24

# ARTILCE XII
## Duties of Business Officers

### Section 1

a. The President shall preside at all regular and special meetings, preserver order, decide all points of order that may be raised and cast the deciding vote in the case of a tie.
b. He or she shall sign all orders on the Treasurer for such sums of money as shall be ordered paid by the Company.
c. He or she shall appoint all committees for his or her term of office.

### Section 2

The President Elect, during the absence of the President, shall perform all the duties and requirements imposed upon the President.

### Section 3

The Vice-President, during the absence of the President Elect and the President, shall perform all duties and requirements imposed upon the President.

### Section 4

a. The secretary shall keep a just and impartial record, the minutes of the proceedings of the Company and a roll call book of the members of the Company.
b. He or she shall conduct all Company correspondence and draw and/or attest all orders voted upon at Company request.

### Section 5

a. The Treasurer shall receive all monies paid to the company or department; credit the amount to the proper account at the earliest practical time, taking receipt for the same.
b. He shall deliver promptly all papers, monies, or other properties of the Company, in his/her possession, to his/her successor in office, or anyone especially appointed to receive them; and to perform such other duties as pertain to his office.
c. He shall, at the last regular meeting of the year, make a report to the company of all monies received and expended, and within one (1) month from retiring from office, deliver the his/her successor all books and papers belonging to the company.
d. An auditing committee shall be appointed by the President and they shall carefully examine the books and audit the same, together with the accounts of the Treasurer, Assistant Secretary-Treasurer and report in writing at the first regular meeting in January. Audit must be completed by April 1st.
e. The Company may appoint a professional auditing firm to conduct an annual audit in which case the results of the audit will be rendered as per the auditing firm's schedule.

### Section 6

a. The Assistant Secretary-Treasurer will assist the Secretary and Treasurer at theirs, the President, and the Chiefs discretion, in any way that is deemed helpful to said offices. He shall also act as substitute in the Secretary's or the Treasurer's extended absence by appointment from the President.

25

## Section 7

a. It shall be the duties of the Directors to furnish advisory aid to the officers of the Company and to sit with the officers and the Fire Chief as an executive board, a discipline committee and a steering committee.

b. This committee shall meet at least once monthly preceding the regular meeting of the Company or more often as deemed necessary on the call of any two (2) directors or the President.

    1. All items that have a purchase cost in excess of $500.00 with the exception of the board's emergency allocation must have a purchase order signed by the President of the company, a board member, or an approved committee member, who has been authorized to make such purchases by the membership of the Company.  Such items shall relate to but not be limited to the Company buildings, furniture, fixtures, and such buildings or physical property of the Company.  The Fire Chief shall issue a purchase order for all items in excess of $500.00 that have been approved by the company's membership for purchase supplies.  Purchase orders may also be issued at the discretion or request of the first obtaining membership approval or the approval of the officer herein assigns to approve such purchases.

    2. Annually budgeted items that are stated and approved for purchase in the annual operating budget of the company may be purchased at the discretion of the Company officers having authority to purchase said items or supplies.

c. Any elected officers of the company who shall be absent from three (3) consecutive meetings unless for sickness or some other unavoidable cause that prevents their attendance, shall upon review of the board, be removed from office and said office be declared vacant.  If absent due to sickness or other unavoidable cause, he or she shall be allowed six (6) consecutive absences before the office is declared vacant. The unexpired term shall be filled by appointment of the Board of Directors.

## Section 8

### Financial Responsibilities

a. It shall be the duties of the business officers to oversee the financial operations of the Neshannock Township Volunteer Fire Company. The Business officers shall ensure that proper financial practices are followed in the areas of accounts receivable, accounts payable, financial accounts, and investments.

b. The following policies shall apply in addition to the business officer's duties listed previously in this section.

    i. Persons with close personal ties (husband/wife; brother/sister; business partners) cannot handle cash without a third party present.

    ii. Frequent deposits will be made for large amounts of cash or donations.

    iii. At minimum two people shall be responsible for reconciliation and deposit of cash with the treasurer/ assistant secretary-treasurer rendering a report at each month meeting.   iv. All donations or income shall have receipts or be recorded so to have documentation for accounting purposes.

    v. All business officers shall be able to and be bonded with the premium paid by the Fire Company.

c. Accounts payable: Company bills shall be received and processed indicating to which account the invoice is to be charged to. Invoices to be paid shall be prepared a

reasonable amount of time prior to the monthly regular company meeting. All invoices shall be approved to be paid by vote at the company meeting and signed by two authorized business officers.

## ARTICE XIII
## Fire Organization

### Section 1

a.  The company shall have one Fire Chief, One (1) Deputy Chief, (1) one Captain, and any other officer as the Fire Chief see fit.

b.  The members shall elect the Chief biannually (every two years). The Chief shall appoint the Deputy Chief and Line Officers.  They shall meet the requirements specified previously in this document.

c.  The Chief shall have and exercise supreme command at all emergencies and at all times when the officers and members are on duty.  In his absence, the Deputy Chief or next officer in rank shall perform all duties and functions of the Chief.

d.  The Chief shall be the Chief Executive Officer and custodian of all property of the Company.  He shall see that the Company is at all times equipped and ready and trained for service, and that the equipment is properly cared and stored and in condition for immediate use.

e.  The Chief, or clerk appointed by the Chief, shall make reports on all fires.  Reports are to be sent to Pennsylvania State Police, any other state or federal agencies, and a copy kept on file for the Company.

f.  It is the responsibility of the Chiefs to develop cause to be adopted and enforce the Standard Operating Guides.

g.  The Chief and Line Officers must have five (5) years' service in the company and must meet the minimum training requirements as determined by the Fire Chief and meet requirements set forth in the Job Descriptions as posted in the Member Handbook.

### Section 2

a.  Fire Police Captain will be elected by the Fire Police biannually every two years). The fire Police Captain shall appoint a Lieutenant annually.  The Lieutenant shall meet the requirements specified previously in this document.

b.  The Fire Police Captain shall have power and regulations governing the organization not to conflict with the organization which they come under (i.e. Fire suppression, municipal authority, etc.)

c.  Fire Police Captain will be charged with instruction of all personnel under their command.  They will also enforce the rules and regulations for traffic control and security at emergency scene as set forth by the Pennsylvania State Police, Bureau of Motor Vehicles, and local ordinances established by the Superintendent of Police pertaining to this department.

# ARTICLE XIV
## Problem Resolution

Any member having grievance shall take the following measures:

1. The member shall reduce the alleged grievance to writing and submit it to the Fire Chief within three (3) days.
2. If the Fire Chief does not resolve the grievance, the member shall reduce the grievance to writing once again and request to present it before the Board of Directors. Such request shall be filed within thirty (30) days of the alleged grievance. The decision of the Board of Directors shall be rendered within fifteen (15) days and shall be rendered final.

# ARTICLE XV
## Miscellaneous Provisions

There may be, with the consent of the NTVFC, an Auxiliary formed for the purpose of aiding the firefighters in raising money and giving any other help needed. The Auxiliary shall be under the sole jurisdiction of the NTVFC and can be dissolved at any time by a majority vote of ballots case or universal sign at a meeting of the Company.

# ARTICLE XVI
## Rules and Regulations

a. There shall be a standard of policy within the fire company to be known as the Neshannock Township Volunteer Fire Company Operational Rules and Regulations for Personnel and Equipment.
b. There shall be an Member Handbook that shall serve as an informational guide for all department members.

29

## ARTICLE XVII
### Discipline

### Section 1

Any members who shall take the apparatus from the engine room, except qualified drivers at the time of alarm, or other emergency without the permission of the Fire Chief, Deputy Chief, or Line Officer, shall be suspended for a period of thirty (30) days.

### Section 2

Any member, who shall in time of fire, or in or about the Fire Company property, raise or cause disturbance, or dereliction of duties, shall be subject to disciplinary action upon written request to the President.  The Fire Chief or Officer in Charge may also immediately suspend a member for the reasons stated for a maximum of 48 hours. During this time a formal written request must be made to the President for the reason and further review of disciplinary action.

### Section 3

Any person who shall cause the alarm to sound except when necessary shall face disciplinary action.

### Section 4

Any person who shall willfully destroy Company property shall be charged with the costs of repair. In addition, he/she shall be disciplined as the incident warrants.

### Section 5

Any member withholding any funds, books, papers, or other Company property shall be expelled and legal proceedings brought against him/her for their recovery unless a reasonable excuse can be given and accepted by two-thirds (2/3) of the votes cast at a regular meeting. Voting will be by secret ballot.

### Section 6

Any member who discusses confidential business of the Company with non-members shall be charged with a violation of the By-laws and Constitution.

### Section 7

Any member who shall violate the Constitution, By-Laws or other regulations of the Company or whose conduct shall be improper and damaging to the good will of the Company shall be expelled or suspended from the Company in the following manner:

    a. The Fire Chief or Officer in Charge may immediately suspend a member for a maximum of 48 hours for any of the actions listed in this section. At time of suspension the Officer must follow formal procedures with the Company President.

    b. Charges against offending member must be made in writing and directed to the President within 48 hours of the offense.

    c. When the President receives letters he directs the recording Secretary to immediately mail a letter to the accused of his/her charges and advise them of time and date of the hearing.  The meeting shall be posted at least five days prior to the date of the meeting, and must be attended by a quorum of the elected officers.

    d. Suspension guidelines as follows:

        First Offense......................fifteen (15) days
        Second Offense..................thirty (30) days
        Third Offense.....................sixty (60) days
        Fourth Offense...................ninety (90) days

Fifth Offense.......................Permanent expulsion from the company
e.   Elected Officers should present to the body at the next meeting the extent and duration of punishment depending on the offense.
f.   The accused has the right to appeal an unfavorable verdict at the next regular company meeting. At which time two-thirds (2/3) of the votes cast in favor of the accused will exonerate the offense.  This vote must be secret ballot and will rule over the elected officer's decision.
g.   All suspensions will be total suspension from all Fire Company activities.

## Section 8

Any member who is arrested and convicted on or off duty will automatically be suspended for a period up to thirty (30) days while the Board of Directors investigates the reason for arrest. Arrests do not include minor traffic violations. Arrest-conviction suspension guidelines as follows:

Summary Offense or Misdemeanors.......fifteen (15) to ninety (90) days suspension

Felony Offense...................................Permanent expulsion from the company

## Section 9

The Elected Officers shall have the right to deviate from the above set of guidelines depending on the severity of the offense.

31

## ARTICLE XVIII
### Dissolution

<u>Section 1</u>

Should the NTVFC determine that is shall be necessary to terminate all responsibilities and cease operations as a chartered organization, all remaining assets shall be distributed as follows:

1.  All creditors shall be satisfied for all debts and obligations due from the NTVFC.
2.  All remaining assets shall be conveyed to the local governing body of the Township of Neshannock with the stipulation that such assets be utilized solely for fire protection services to the Township of Neshannock.

# Exhibits

## Correspondence

**EXHIBIT** 

IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

| | |
|---|---|
| ANNE PAPA, | CIVIL DIVISION |
| Plaintiff, | |
| | 10701 of 2020ca |
| v. | |
| | **TEN DAY NOTICE OF PRAECIPE TO ENTER JUDGMENT OF NON PROS FOR FAILURE TO FILE A COMPLAINT** |
| NESHANNOCK VFD, NESHANNOCK VFD BOARD, JOHN D. DICOLA, CHIEF AND INDIVIDUALLY, BRADLEY SHAFFER, DEPUTY AND INDIVIDUALLY, AND BRIAN MELCER, DEPUTY AND INDIVIDUALLY, | |
| | Filed on Behalf of Defendants, |
| | *Neshannock VFD, Neshannock VFD Board, John D. Dicola, Chief and individually, Bradley Shaffer, Deputy and individually, and Brian Melcer, Deputy and individually.* |
| Defendants. | |
| | Counsel of Record for This Party: |
| | **Bruce E. Rende, Esquire** PA I.D.#52714 |
| | **Timothy D. Iannini, Esquire** PA I.D. #205572 |
| | ROBB LEONARD MULVIHILL LLP Firm #249 BNY Mellon Center 500 Grant Street, Suite 2300 Pittsburgh, PA 15219 |
| | Telephone:    (412) 281-5431 Facsimile:    (412) 281-3711 |
| **JURY TRIAL DEMANDED** | |

IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

| | |
|---|---|
| ANNE PAPA, | CIVIL DIVISION |
| Plaintiff, | |
| | 10701 of 2020ca |
| v. | |
| NESHANNOCK VFD, NESHANNOCK VFD BOARD, JOHN D. DICOLA, CHIEF AND INDIVIDUALLY, BRADLEY SHAFFER, DEPUTY AND INDIVIDUALLY, AND BRIAN MELCER, DEPUTY AND INDIVIDUALLY, | |
| Defendants. | |

**TEN DAY NOTICE OF PRAECIPE TO ENTER JUDGMENT OF NON PROS FOR FAILURE TO FILE A COMPLAINT**

TO:   Anne Papa
      c/o Angelo A. Papa, Esquire
      Signature Hill Legal
      318 Highland Avenue
      New Castle, PA 16101

DATE OF NOTICE:  December 18, 2020

### IMPORTANT NOTICE

YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO TAKE ACTION REQUIRED OF YOU IN THIS CASE. UNLESS YOU ACT WITHIN TEN (10) DAYS FROM THE DATE OF THIS NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS.  YOU SHOULD TAKE THIS NOTICE TO A LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE FOLLOWING OFFICE TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE

OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
430 Court Street
New Castle, PA 16101
Telephone: (412) 261-5555
Phone: 724-656-1921

Respectfully submitted,

ROBB LEONARD MULVIHILL LLP

By: _____ */s/Bruce E. Rende*_____
Bruce E. Rende, Esquire
*Counsel for Defendants,*
*Neshannock VFD, Neshannock VFD Board,*
*John D. Dicola, Chief and individually,*
*Bradley Shaffer, Deputy and individually,*
*and Brian Melcer, Deputy and individually.*

{R1122821.1 }

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Ten Day Notice of Praecipe to Enter Judgment of Non Pros for Failure to File a Complaint was served via Email and First Class U.S. mail, postage prepaid upon all parties and counsel of record this 18th day of December, 2020, as follows:

Angelo A. Papa, Esquire
Signature Hill Legal
318 Highland Avenue
New Castle, PA 16101

*/s/Bruce E. Rende*
Bruce E. Rende, Esquire

{R1122821.1 }

# ROBB LEONARD MULVIHILL

### ATTORNEYS AT LAW

December 18, 2020

Bruce E. Rende
brende@rlmlawfirm.com
*Also admitted in WV & OH*

**Via Email and Regular Mail**
Angelo A. Papa, Esquire
Signature Hill Legal
318 Highland Avenue
New Castle, PA 16101

RE:   **Anne Papa v. Neshannock VFD, Neshannock VFD Board, John D. Dicola,**
**Chief and individually, Bradley Shaffer, Deputy and individually, and Brian**
**Melcer, Deputy and individually.**
**Claim No: PATR20100579-00001**
**Our File No: 26674BER**

Dear Mr. Papa:

On November 6, 2020, we served a Rule upon Plaintiff to file a Complaint in this matter. Thereafter, at your request, on November 19, 2020, we granted Plaintiff an extension until December 16, 2020 within which to file that Complaint.

On December 17, 2020, you advised us that a Complaint had not been filed despite our agreement that one would be filed by December 16, 2020. At that time, you requested that we now agree to allow Plaintiff to pursue pre-complaint discovery. We were unwilling to acquiesce in that request. At that time, you did not provide an indication when the Complaint would be filed.

Accordingly, we are serving a Ten Day Notice of Praecipe to Enter Judgment of Nos Pros for Failure to File a Complaint upon Plaintiff. In accordance with our discussion of December 17, 2020, you advised us that you were willing to accept this Ten Day Notice by email. Despite your willingness to accept this correspondence by email, we will also be sending a copy by regular mail.

We look forward to receipt of Plaintiff's Complaint.

Very truly yours,

*/s/Bruce E. Rende*
Bruce E. Rende

BER/evm
Enclosure

{R1122810.1 }



# Signature Hill ®

*LEGAL*



www.signaturehill.com

318 Highland Avenue – New Castle, PA 16101 – 724 654-8111 – Fax 724-654-6766
Email angelopapaesq@gmail.com

Angelo A. Papa, Esquire PC*                    * Admitted Federal Court
Malcolm Pollard, Esquire**                      **Certified Public Accountant

October, 13, 2020

Neshannock Volunteer Fire Company
3135 Mercer Road
Neshannock, PA 16105
Fax: 724-654-6814

Re:  Anne Marie Elizabeth Papa

To Whom It May Concern:

I have enclosed a copy of my correspondence from January 8, 2020, which to the extent relevant, is incorporated by reference as though fully set forth herein.

Notwithstanding several discussions with your legal counsel, and our working relationship in this personnel matter, and my client waiting several weeks for a hearing date, time and place, she has heard nothing from anyone.

Apparently, as she has been instructed, she made arrangements to return company property, and retrieve her personal property, on or before 1:00 PM today (October 13, 2020).

To add insult to the injury caused by multiple violations of your own handbook and bylaws, she has been further instructed to make these exchanges directly and only through, the Neshannock Township Police Department, likely motivated by your seeking to further injure her by defamatory.  She certainly is not any type of a threat, and what's more (you all know that).

Nothing in this correspondence, or our participation, action or inaction to date, in any way whatsoever, in any and all forums waives any or all of her rights including without limit: challenging what is and is not her, or the fire company property; further discovered items by either of us; and *most importantly* her immediately seeking full and proper redress which will be promptly presented in formal legal format without further notice, except that required by law.

The process and procedural journey as you are we are about to embark upon, will clearly reveal who is, and who is not part of this sad, unfair abuse of power, and to those who sat by and allowed it to happen "shame on you", and to those who are directly involved, will let the court determine a proper remedy.



Very truly yours,

Angelo A. Papa, Esquire

AAP
CC:
Neshannock Fire Company Board,
Fire Chief,
Deputy Fire Chiefs,
Township Supervisors,
Neshannock Police Department,
Attorney Richard Harper Legal Counsel,
Annie Marie Elizabeth Papa, and
Dianne M. Papa



# Neshannock
## Volunteer Fire Company

3135 Mercer Road
Neshannock, PA 16105
www.neshannockfire.com

Headquarters: 724-654-4800     Fax: 724-654-6814     Dispatcher (Non-Emergency): 724-656-9300

Annie Papa

234 E Northview Ave
New Castle, Pa 16105

Ms. Papa:

It has been brought to the attention of Neshannock Township Volunteer Fire Company Board of Directors that on July 20, 2020 you took critical safety equipment off of fire apparatus and removed it from the fire station without authorization. After an investigation of this report, you have been determined to be in violation of the membership policy 701 which is attached for your review.

The Board of Directors voted on July 27, 2020 to terminate your membership in the Neshannock Township Volunteer Fire Company effective immediately.  Consequently, you should do the following:
1. Within 24 hours of your receipt of this letter, contact the Neshannock Township Police Department to arrange a time during business hours to return all fire company equipment in your possession.  This equipment includes:

    1. Self Contained Breathing Apparatus removed from Rescue 150 along with facepiece and all other accessories that accompany the breathing apparatus
    2. Fire company radio equipment and pager
    3. Keys fob(s)
    4. All company-issued uniform attire and/or badges that bear the name, insignia, or likeness of the Neshannock Township Volunteer Fire company
    5. Any other items that belong to the Neshannock Township Volunteer Fire Company

2. Cease and desist any representation that you are a current member of the Neshannock Township Volunteer Fire Company
3. Cease and desist all forms of communication that suggest you are a current member of the Neshannock Township Volunteer Fire Company, including all social media profiles, posts, or references
4. Provide to the Neshannock Township Police Department a list of your personal property that you believe to be at the fire station(s) so we may attempt to locate the items and return them to you.

Your prompt attention to these matters is requested.

Sincerely,

Ed Harris, Secretary.

D5

# Neshannock Township Volunteer Fire Company Volunteer Fire Company Member Handbook

## 701 Member Conduct and Work Rules

To ensure orderly operations and provide the best possible work environment, we expect you to follow rules of conduct that will protect the interests and safety of all members and Neshannock Township Volunteer Fire Company.

Although it is not possible to list all the forms of behavior that are considered unacceptable at work, the following are some examples of conduct that may result in disciplinary action, up to and including termination of membership:

* Possession of firearms or other dangerous weapons in company property
* Any conduct that endangers the safety of others
* Gambling on company property
* Possession, distribution, sale, or use of alcohol or illegal drugs at work or while operating equipment
* Theft or inappropriate removal or possession of property
* Falsification of timekeeping records
* Working under the influence of alcohol or illegal drugs
* Fighting or threatening violence in the workplace
* Negligence or improper conduct leading to damage of employer-owned or customer-owned property
* Insubordination or other disrespectful conduct
* Violation of safety or health rules
* Smoking in prohibited areas
* Sexual or other unlawful or unwelcome harassment or sexual acts committed on the premises
* Possession of dangerous or unauthorized materials, such as explosives or firearms, in the workplace
* Unauthorized use of telephones, mail system, or other employer-owned equipment
* Violation of personnel policies
* Unsatisfactory performance or conduct

 NESHANNOCK TOWNSHIP FIRE DEPARTMENT

3135 Mercer Road
New Castle, PA 16105

February 20, 2020

Ms. Ann Papa,

The Board of Directors of the Neshannock Township Volunteer Fire Company recently met and has decided on a response to your recent activity during the training night of January 7, 2020. Actions such as this are detrimental to the health and safety to yourself as well as others.

Any further violations of the department by-laws, standard operating guidelines, or officer's orders could result in disciplinary action(s) including complete removal from the fire department.

Any and all correspondence regarding this action should be directed to the fire company's solicitor.

Ed Harris, secretary, NTVFC

D4

# Signature Hill ®

*LEGAL*



**www.signaturehill.com**

318 Highland Avenue – New Castle, PA 16101 – 724 654-8111 – Fax 724-654-6766
e-mail angelopapaesq@gmail.com

Angelo A. Papa, Esquire PC*                    * Admitted Federal Court
Malcolm Pollard, Esquire**                     **Certified Public Accountant

February 4, 2020

Richard Harper
14 North Mercer St.
New Castle, PA 16101
Fax: 724-658-4346

Re: Anne Marie Elizabeth Papa, EMT/Neshannock/ VFD

Dear Richard,

As you can see, we have returned from Cancun, and I am doing my best to try to get back into the groove.

As a first order of business, I would note that I assume by now you were able to talk to the chief. If I am correct, I would believe that he would be one of several references concerning how dedicated Annie is to saving lives, and again being involved, ASAP. It's at least been two weeks or so, and I am advising her to resume her participation, especially in light of your professional involvement.

I have instructed her to merely move on and continue to do what she is told and function as a valuable, subordinate member of the fine volunteers.

I've tried to call you yesterday because I knew the Tuesday training session was upon us.

If I can be of any further assistance, please do not hesitate to call. Thank you for your kind, professional, statesman like involvement. It is easy to see while you are held in such esteem in the Lawrence County legal community. Thank you- God Bless.

Very truly yours,

Angelo A. Papa, Esquire

AAP

CC: Annie Papa
      Dianne Papa



LAW OFFICE
# FLANNERY SELTZER HARPER & PALMER
SUITE 300, HUNTINGTON BANK BUILDING
14 NORTH MERCER STREET
NEW CASTLE, PENNSYLVANIA 16101-3765

724-658-2000
FAX: 724-658-4346

RICHARD E. FLANNERY
JOHN R. SELTZER
RICHARD A. HARPER
ALLEN L. PALMER
CAROLYN FLANNERY-LANG

JOHN W. FLANNERY
1942-2016

HARRY A. FLANNERY
OF COUNSEL

January 15, 2020

Angelo A. Papa, Esq.
318 Highland Ave.
New Castle, PA 16101

RE: Neshannock Township Volunteer Fire Company

Dear Mr. Papa:

Your letter addressed to the above organization has been forwarded to me for response.

The letter has been forwarded to the Fire Company's liability insurance carrier.

In light of your implied threat of litigation, I have instructed the officers and members of the organization to have no contact with you or anyone acting on your behalf. Accordingly we will refuse to cooperate in any "investigation" by way of statements, interviews or the like.

Please forward all future correspondence on this matter to the undersigned.

Very truly yours,

BY:

Richard A. Harper
Flannery Seltzer Harper & Palmer

RAH/thm
Cc: Neshannock Township Volunteer Fire Company

# Signature Hill ®



*LEGAL*

www.signaturehill.com

---

318 Highland Avenue – New Castle, PA 16101 – 724 654-8111 – Fax 724-654-6766
Email angelopapaesq@gmail.com

Angelo A. Papa, Esquire PC*
Malcolm Pollard, Esquire**

\* Admitted Federal Court
\*\*Certified Public Accountant

January 8, 2020

Neshannock Volunteer Fire Company
3135 Mercer Road
Neshannock, PA 16105
Fax: 724-654-6814

Re: Anne Marie Elizabeth Papa

To Whom It May Concern:

Please be advised that aside from being Anne Marie Elizabeth Papa's father, I have been retained to represent any and all legal interests including without limit:
A) Her multi-year, very expensive in time and effort, pursuit and acquisition of multiple firefighter degrees and credentials, and,
B) Her lifelong reputation as a good worker and dedicated life saver including EMT, etc., and,
C) Her reputation in the community, and etc.

I am in receipt of information concerning various damaging, exaggerated, defamatory statements made by various people in the fire department, and am advising her to immediately and until further notice refrain from attending or speaking directly to any fire department or other township personnel: until a full investigation and transcribed under oath testimony can be secured from any and all persons who have made such statements in the past several months.

This letter is to advise that she urgently will defend her position as a firefighter and demand compliance with all rules and regulations, by laws, statutory laws, common law in preserving and protecting her hard-earned position and this sequestration should not in any way be interpreted as an abandonment or failure to participate.

Please communicate any and all fire department business concerning her directly to my attention at 724-654-8111 (office), 724-316-3551 (cell phone), and angelopapaesq@gmail.com (email). We have always had a friendly relationship with some of you gentlemen and hope that continues, but we remind you that in a court of law, even repeating an untrue defamatory statement and announcing you do not believe it is still actionable in a court of law.



I will not sit idly by and permit my client to be defamed or lose her position without justification.

Very truly yours,

Angelo A. Papa, Esquire

AAP
CC: Fire Chief, Assistant Fire Chief,
Township Supervisors
Legal Counsel
Frank Jannetti
Annie Marie Elizabeth Papa
Dianne M. Papa

D1



FILED/ORIGINAL

2020 DEC 23  PM 3: 02

JODI KLABON-ESOLDO
PRO AND CLERK